*Mayor and City Council of Baltimore v. ProVen Management, Inc.*, No. 8, September Term, 2020, Opinion by Booth, J.

**ADMINISTRATIVE LAW & PROCEDURE — JUDICIAL REVIEW — COMMON LAW MANDAMUS — RIGHT TO APPEAL —** Where a petition for judicial review of an agency decision is filed under a local charter or ordinance, for which there is no right of appellate review beyond the circuit court, Courts and Judicial Proceedings Article ("CJ") § 12-302(a) precludes appellate review in the Court of Special Appeals and the Court of Appeals. In determining whether there is a right to appeal, we look at the nature and substance of the circuit court action as a whole to determine whether it was, in fact, an action seeking judicial review of an administrative agency decision (for which appellate review is precluded under CJ § 12-302(a)), or whether it was a common law mandamus action (for which appellate review would be available under the general appeals statute, CJ § 12-301). Applying these principles to the circuit court proceeding in this case, the Court of Appeals held that action was, in both form and substance, an action seeking judicial review of an administrative agency decision filed under the applicable provisions of the Baltimore City Charter, and therefore, the Court of Special Appeals had no jurisdiction to consider this appeal.

Circuit Court for Baltimore City
Case No.: 24-C-17-004805
Argued: October 30, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 8

September Term, 2020

MAYOR AND CITY COUNCIL
OF BALTIMORE

v.

PROVEN MANAGEMENT, INC.

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Battaglia, Lynne A.
    (Senior Judge, Specially Assigned),

JJ.

Opinion by Booth, J.

Filed: March 1, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

"It is an often stated principle of Maryland law that appellate jurisdiction, except as constitutionally authorized, is determined entirely by statute, and that, therefore, a right of appeal must be legislatively granted."[1]  In this case, we must determine whether the Court of Special Appeals had jurisdiction to consider an appeal filed by ProVen Management, Inc. ("ProVen") in connection with work that it performed under a contract with the Baltimore City Department of Public Works ("Department").  The contract required that ProVen clean certain sewer lines for a lump sum contract price of almost $4 million.  When the work was completed, ProVen sought an additional $1.6 million in compensation under the contract.  After three levels of administrative review involving written submissions, and a hearing before the Department's Director, the Director issued a final written decision in favor of the City.

ProVen filed a petition for judicial review in the Circuit Court for Baltimore City, alleging procedural due process errors, as well as substantive errors.  ProVen requested that the circuit court enter judgment in its favor on its monetary claims and remand the matter to the Director for a determination on damages.  The circuit court affirmed the Director's decision.

ProVen filed an appeal to the Court of Special Appeals, once again alleging that the Director made substantive and procedural errors.  The City filed a motion to dismiss in connection with its brief, alleging that the Court of Special Appeals lacked jurisdiction under Courts and Judicial Proceedings Article ("CJ") § 12-302(a).  In an unreported

---

[1] *Gisriel v. Ocean City Bd. of Supervisors of Elections*, 345 Md. 477, 485 (1997), *cert. denied*, 522 U.S. 1053 (1998).

opinion, the Court of Special Appeals denied the City's motion to dismiss, concluding that it had jurisdiction to consider the matter under *Murrell v. Mayor and City Council of Baltimore*, 376 Md. 170 (2003). *In re ProVen Mgmt., Inc.*, No. 610, 2020 WL 119651, at *12 (Md. Ct. Spec. App. Jan. 10, 2020). After determining that it had jurisdiction to consider the appeal, the intermediate appellate court "neither affirmed nor reversed" and remanded the matter to the circuit court with "instructions to remand the case to the Agency for further proceedings and the filing of a decision that complies with ministerial requirements."

As set forth more fully herein, whether the Court of Special Appeals had jurisdiction to consider this matter depends upon whether ProVen's "petition for judicial review" was *in fact* a petition seeking judicial review of a decision of an administrative agency arising under statute or local law (for which appellate review by the Court of Special Appeals would be precluded by CJ § 12-302(a)) *or* whether it was a common law mandamus action (for which appellate review would be available under the general appeals statute, CJ § 12-301). For the reasons set forth herein, we hold that ProVen's petition for judicial review was, in both form and substance, a petition for judicial review of an administrative agency decision arising under the applicable provisions of the Baltimore City Charter, and not a common law action seeking a writ of mandamus. Because the Charter did not provide a right of appeal to the Court of Special Appeals, that court had no jurisdiction to consider the matter and dismissal was required.

2

# I.

## Factual Background and Procedural History

Although the basic facts giving rise to this appeal are not in dispute, we shall discuss them in order to provide some context for the proceeding that ultimately gives rise to the jurisdictional issue presented.

### A. *The Contract*

In July 2013, the Department solicited bids for a contractor to clean a large section of the City of Baltimore's ("City") sewer system. The contract documents required the removal of sediment and debris from 12,000 linear feet of underground sewer lines that run from North Schroeder and West Lexington Streets to North Wolfe and East Chase Streets. The work was to be performed according to the Department's detailed design specifications and drawings. Bidders were advised of conditions that they might encounter in the sewer lines and were provided sonar sediment profiles showing the volume of debris that could be expected. Bidders were also instructed that they could assume that the unit weight of the extracted material would be 0.9 tons per cubic yard, based upon a similar sewer clearing project that had been undertaken in the City.

The contract documents divided the sewer lines to be cleaned into 37 segments, 21 of which were located to the west of Greenmount Avenue (the "west side") and 16 of which were east of Greenmount Avenue (the "east side"). The contractor was to use special equipment to push the debris down the sewer line to the end of each segment, where it would be extracted through a manhole and transported to a waste management facility.

3

Sewage flowed in the sewer lines from west to east. Consequently, the contract documents required the project to proceed sequentially from the west side to the east side to avoid having subsequent work push debris into already cleaned segments. The contract documents stated that the Department would consider permitting the contractor to work on multiple segments at a time to comply with the established time limits, but, to avoid contamination caused by non-sequential work, the Department would only approve segments if all upstream segments had been completed and approved.

The contract restricted daytime roadway and lane closures, which meant that most of the work would have to occur during nighttime hours, between 7:00 p.m. and 6:00 a.m. The time for completion was 365 days, and the contract stated that time was of the essence. In the event the project took more than 365 days, the City had the right to assess liquidated damages in the amount of $500 per day. It also provided for compensable time extensions for changes in the work requested by the Department.

ProVen submitted a fixed price bid and was awarded the contract in the original sum of $3,894,473. ProVen and the City entered into the contract on April 23, 2014. The Department issued a notice to proceed with the work on July 29, 2014 and July 30, 2015 was set as the completion date.

The parties agree that the project did not go as planned. The cleaning proved more challenging than expected for various reasons. For example, in October 2014, ProVen encountered hazardous waste material, which required the City to suspend work on the project for about 38 days. After resolving the issue, in an effort to get the project back on schedule, ProVen obtained the City's approval to work on the west side of the project

4

during daytime hours. Less than a month after obtaining the City's approval, the Department ordered ProVen to cease working at night on the west side of the project because a complaint had been made about the noise level. On the east side of the project, ProVen encountered a large amount of rags in the extracted material, making extraction more difficult than typical sediment. The Department did not issue conditional acceptance of the work until December 12, 2016—roughly a year and a half behind schedule.

Throughout the project, the Department approved several adjustments in time and compensation, but ProVen asserted that it was entitled to additional compensation and time extensions. ProVen and the City disagreed about who caused many of the delays and the problems, as well as which party bore the risk of such delays and problems.

Under the contract, disputes were to be resolved under the procedures set forth in the disputes clause[2] and the Baltimore City Charter Article II, § 4A(g).

---

[2] The contract's dispute clause incorporated by reference the City's process for handling contract disputes set forth in the City's Standard Specifications, which generally applies to construction contracts entered into by the Department, and which is commonly referred to as the "Green Book." Green Book Specification 00 73 84 provides a multi-level administrative review process. Green Book, Specification 00 73 84, (A)(1)–(4). The first step of the administrative process involves review of the claims by the project's inspector, engineer, and the Department's division head of construction management. *Id.* at (A)(2). As part of that administrative review process, the contractor is required to submit a written itemized statement of the factual and contractual details and supporting documents related to the claim. *Id.* at (A)(1). Any claims that are denied can be appealed for review by the Head of the Bureau. *Id.* at (A)(2). If denied again, the claims can be appealed for review by the Department's Director. *Id.* at (A)(3).

With respect to the administrative hearing before the Director, the Green Book states that the Director "shall act as the Hearing Officer and shall hold one [] administrative hearing on the record at the conclusion of the Work on the Contract to resolve any and all claims and/or disputes, which have been timely, appealed to the Director, pursuant to these procedures." *Id.* at (A)(4)(a). "The decision of the Director is final and conclusive, but is

## B. Initial Administrative Review

On January 5, 2017, pursuant to the contract's disputes clause, ProVen submitted a formal administrative request to the Office of Engineering and Construction (the "OEC") for more than $1.6 million in additional compensation for at least 11 different claims. In an approximately 160-page letter addressed to the OEC's construction project supervisor, ProVen detailed claims for more than $1.6 million in additional compensation and a time extension of 590 days. After reviewing ProVen's claims, the OEC construction project supervisor issued a four-page response denying ProVen's claims for additional compensation and instead recommended that "a total of 15 non-compensable calendar days be added to the authorized completion date."

Following the procedure outlined in the contract's disputes clause, on March 21, 2017, ProVen filed a notice of appeal of the OEC's denial of the claims. Under the second level of review, the Acting Chief of the OEC "found no grounds" to change the OEC's initial determination, advising that it would accept the construction project supervisor's conclusion, and confirmed the OEC's recommendation that 15 non-compensable days be added to the authorized completion date.[3] The Acting Chief noted that the City was "considering and reserving the right to assess liquidated damages in the amount of $500.00

---

subject to review on the record by a court of competent jurisdiction pursuant to the Baltimore City Charter." *Id*. at (A)(4)(c).

[3] At this second administrative level of review, in addition to considering ProVen's written claim and supporting documentation, the OEC met with representatives of ProVen to discuss ProVen's claims and the OEC's initial response.

6

per day[.]" Dissatisfied with the decision, ProVen appealed to the Department's Director, Mr. Rudolph Chow, P.E., for additional administrative review.

### C. The Administrative Proceeding Before Director Chow

An administrative hearing was held before Director Chow on June 29, 2017. The hearing was recorded and generated a 57-page transcript. At the outset of the administrative hearing, Director Chow laid out some "ground rules," stating that the hearing would proceed in "six steps[,]" which included opening statements by each party, with an opportunity for each party to provide their contentions, an opportunity for each party to rebut the contentions of the other, and closing arguments.[4] Director Chow explained that he did not want the hearing "to be a long drawn out argument going back and forth" because he felt he had "all the information, the exchange, hearings or discussions or email exchanges and all that[.]" Nevertheless, Director Chow acknowledged that "if either side feels that additional information needs to be provided" to "please do so during this hearing." Director Chow informed the parties that he intended to issue a decision based solely on information received prior to the hearing and any additional information provided during the hearing.

---

[4] As noted above, the Green Book states that the administrative hearing before the Director shall be conducted "on the record" but it does not describe any hearing procedures or requirements other than the preparation of a transcript, the cost of which is shared equally by the parties. Green Book, Specification 00 73 84, (A)(4)(a), (b). As set forth herein, although the witnesses were not sworn, three representatives from ProVen were in attendance and provided statements in support of ProVen's position. The Director also received additional exhibits.

7

In his opening statement, counsel for ProVen explained that the central legal issue was whether there was a "differing site condition" that had been discovered during the work that was materially different from the specifications in the contract "that nobody expected to find." ProVen's counsel explained that, as a result of the differing site condition, they were requesting "an adjustment in the contract either in time or money[.]"

Although the witnesses were not sworn, three ProVen representatives gave statements in support of ProVen's claims. Ben Hermann, ProVen's project manager, described the "really challenging field conditions" that ProVen encountered throughout the course of the project. Mr. Hermann explained that ProVen had relied upon the 0.9 tons per yard calculation that was provided in the City's bid documents. Mr. Hermann stated that, once the work started, "23 out of the 35 segments" had a considerably lower volume of material density, and that the disparity in density was due to an unusually high volume of rag content. As a result, Mr. Hermann stated that it was necessary for ProVen to undertake more "manual entry and basically rendering our normal cleaning equipment . . . ineffective at times." Mr. Hermann also described further delays arising from "severe pipe deterioration" in a particular segment. Mr. Hermann outlined ProVen's efforts to obtain accurate site information to formulate its cleaning plan, including obtaining pre-cleaning sonar reports to ascertain accurate volumes and weight of the material, and ProVen's efforts to work with the City to keep the project on schedule. In large part due to the unexpected rag content, Mr. Hermann explained that the differing site conditions were "far outside what we reasonably expected when we formulated our bid" based upon ProVen's review of the contract documents. Mr. Hermann also described ProVen's efforts to keep

8

the City updated.  At the conclusion of Mr. Hermann's initial statements, counsel for

ProVen submitted five exhibits, which Director Chow admitted into the record.[5]

Director Chow then asked the City to present its opening statement.  The City

presented its case through Mohamad Alkhatib, one of the City's wastewater project

engineers.  Mr. Alkhatib described the City's bidding process, explaining that, when the

City puts out a bid, it gives the bidders several weeks to review the bidding documents and

ask questions.  He noted that the bidders are expected to review the contract drawings and

specifications and are also encouraged to visit the site prior to submitting a bid.  Mr.

Alkhatib stated that, in connection with the submission of the bid, one of the contract

stipulations requires that the contractor certify that he or she has reviewed the contract

drawings and specifications and can complete the work within the time period specified.

Mr. Alkhatib stated that in this instance, the contractor did not mobilize its crew or

equipment until September 2014, which Mr. Alkhatib characterized as being four months

after the issuance of the notice to proceed.  Mr. Alkhatib stated that for the duration of the

contract, the contractor's monthly schedule updates showed them "falling further behind"

schedule each month, and that the contractor did not deploy a second crew or equipment

to enable them to catch up despite "encouragement from the City[.]"  Mr. Alkhatib pointed

---

[5] The five exhibits submitted by ProVen that were marked and admitted into the record consisted of: an email dated June 9, 2015, in which ProVen advised that, without the City's cooperation, ProVen would not be able to complete the project by December 31, 2015; a written copy of ProVen's opening statement; a copy of a Code of Maryland Regulations definition of "differing site conditions;" a "segment-by-segment breakdown" setting forth the anticipated and actual weight of material removed from each segment; and a multi-page "schedule update."

out that ProVen did not seek the City's approval to permit it to work concurrently in multiple segments by utilizing an additional crew until many months into the project, which was approved by the City in February 2015.

After Mr. Alkhatib's opening statement, Director Chow gave ProVen an opportunity to respond. In response to Mr. Alkhatib's statements about ProVen's delays, Mr. Hermann countered that, at the beginning of the work, he requested that the City permit ProVen to work 24 hours per day at one location. According to Mr. Hermann, although the City initially approved the 24-hour work in one location, the approval was rescinded after a few shifts. Mr. Hermann confirmed that ProVen sought permission from the City to work in multiple locations with multiple crews, which was granted in February 2015.

Director Chow asked Mr. Hermann about the delay between the issuance of the notice to proceed and the commencement of the work. Mr. Hermann explained that ProVen was working on its plan submittals, which had to be approved by the City prior to the commencement of work. Director Chow questioned the timing of the submittals, commenting that they should have been submitted and approved prior to the issuance of the notice to proceed. One of ProVen's officers, Bill Gilmartin interjected that it was ProVen's "first project with the City of Baltimore[]" and that "[n]obody in this room can deny that there's an administrative phase before a project begins work in the field where there are documents submitted to the owner for approval."

Mr. Hermann outlined the timeline once the work commenced, describing the events that created delay, including the discovery of hazardous waste materials, and ProVen's inability to obtain approval to work with multiple crews on both the east side and west side,

10

which was not approved by the Department of Transportation and the consulting engineer until June 2015. Mr. Hermann noted that the concurrent work schedule—where a crew was working in the evenings on the west side and in the daytime on the east side—worked well until the end of August, when the City issued a stop work order on the west side in the evenings as a result of noise complaints, which the City contended violated the noise limitations in the Green Book.

After Mr. Hermann's statements, Mr. Gilmartin refuted Mr. Alkhatib's contention that there had been a four-month delay at the outset of the project, pointing out that ProVen "was issued notice to proceed on July 29[]" and began working in September, so the delay was "one month, not four."

Corbin Marr, who was identified as being in ProVen management, stated that at the pre-construction meeting prior to the commencement of the work, ProVen representatives told the City that ProVen's equipment was "in use on another contract" and that they would start work as soon as they possibly could. Director Chow followed up on Mr. Marr's statement, asking for confirmation that the delay in commencement of construction was based, in part, on the unavailability of ProVen's equipment resulting from its use on another project. Mr. Marr confirmed that it was. Mr. Gilmartin added that ProVen started the work less than 45 days after the issuance of the notice to proceed, which he viewed as being reasonable.

On rebuttal, Mr. Alkhatib pointed out that by February 2015, the City had approved ProVen's use of multiple crews to work on adjacent sections of the project and had encouraged this practice, as the City believed that it would "have actually cut the [project]

11

time." Instead, ProVen opted to seek City approval to undertake concurrent work with multiple crews on non-adjacent sewer segments in other locations.

In closing, ProVen's counsel argued that his client should receive additional compensation based upon principles of fairness and equity, pointing out that ProVen was seeking an "equitable adjustment" that was "not based upon fault or liability." ProVen's counsel admitted that he was aware of "how the Green Book adjusts for risk" but that, notwithstanding the contractual allocation of risk, the City should "be fair." ProVen's counsel argued that "what ProVen is asking for [is] fair and reasonable[.]"

By contrast, Mr. Alkhatib summarized the Department's position as being based upon the contract provisions and the Green Book. Mr. Alkhatib argued that "the contract specification[s]" explicitly stated what the contractor might encounter, that the City had not caused the delays, and that the contract duration was for 365 days. He contended that the OEC's determination that the contractor was only entitled to 15 non-compensable days, as opposed to the contractor's claim for an additional 624 days in compensable time, was correct under the contract documents, the Green Book, and the inspector's daily reports.

Two months later, on August 29, 2017, Director Chow issued the Department's final written decision on ProVen's claims. Because the sufficiency of Director Chow's findings of fact is at the center of this dispute, we set forth below his complete final decision:

**FACTUAL BACKGROUND**

As it did in the earlier claim resolution meetings, ProVen maintained before me that it experienced delays on the project for which it should be compensated. The original project duration was 365 calendar days, and the revised project duration was 380 calendar days. ProVen required 813 calendar days, an increase of 433 days to complete its work. ProVen claims

12

that it is entitled to payment of $1,680,540.09. ProVen asserted that it encountered a differing site condition which caused the delay. However, in the appeal, ProVen acknowledged that the contract documents state that the Contractor could expect any type of material to be found during the cleaning operations. ProVen further states they were aware of the possibility of bulk items, and explained the assumptions they made at bid time based on the contract documents. ProVen acknowledged that the conditions it encountered were outside of what it expected when ProVen formulated the bid. It is clear to me that the contract specifications stated exactly what might be encountered in the pipes and that ProVen was fully aware of these facts prior to bidding.

In addition, at the Appeal Hearing, it was established that [the notice to proceed] was issued on July 30, 2014. ProVen did not start work until September 17, 2014. ProVen testified that equipment that was needed on this project for the City was in use on another project being worked by ProVen. This initial delay was caused by ProVen. ProVen continued to fall behind, and its request to work in multiple areas at once did not occur until December 2014. By this time, approximately half of the contract time had been used and it was too late to recover the initial delay. The evidence presented to me establishes that ProVen caused the initial delay and was not stopped from working at any time by the City. Due to ProVen's initial delay, which increased over time, recovery was not possible.

**FINDINGS**

I heard and have considered all the argument and testimony presented on behalf of ProVen and the City. I have also reviewed and considered all documents presented to me by ProVen and OEC, including the documents presented and discussed at the hearing by both OEC and ProVen. All documents presented to me were admitted into the record and considered by me. After review and consideration, I find no new factual information was presented by either ProVen or OEC. Therefore, I can find no reason to overturn OEC's prior denial of the claim and hereby affirm the denial of ProVen's claim in its entirety. In addition, I am affirming OEC's reservation of the right to assess liquidated damages at the contractually agreed rate of $500.00/day for 433 days or $215,500.00.

Based upon his review of the record and specifically noting that ProVen had not

submitted any new factual information or evidence, Director Chow found no reason to

13

reverse the prior decisions and affirmed the previous administrative denials of ProVen's claims.

### D. Circuit Court Proceeding

In accordance with Article II, § 4A(g) of the Baltimore City Charter,[6] ProVen filed a petition for judicial review of the Director's final decision in the Circuit Court for Baltimore City.  ProVen filed its memorandum in support of its petition, which was submitted "pursuant to Maryland Rule 7-207[.]"

In its memorandum, ProVen presented four questions for review, together with arguments to support each question, as to why the Department's final decision was erroneous.  The first question was whether the Department's final decision was "defective due to a violation of due process under law."  In questions two, three, and four, ProVen argued that the Department's final decision denying three of its damages claims—its hazardous materials claim, its claim relating to the City's west side work stoppage and change in work hours ("stopped work claim"), and its claim relating to unanticipated field conditions relating to the rag content on the east side ("field conditions claim")—should

---

[6] Article II, § 4A(g) of the Baltimore City Charter governs administrative and judicial review of contract disputes between Baltimore City and third parties.  It provides:

> [W]ith regard to a construction contract to which [the City] is a party, Baltimore City may provide or require that if there is a dispute between the parties involving $10,000 or more over the terms of the contract or performance under the contract, the dispute is subject to a determination of questions of fact by an officer or official body of Baltimore City, subject to review on the record by a court of competent jurisdiction.

be reversed because the Director's decision was "arbitrary and capricious, . . . unsupported by substantial evidence on the record, and . . . based upon errors of law."[7]

In its memorandum, ProVen cited to the standard of review applicable to the court's review of an administrative agency decision—whether there is substantial evidence in the record to support the agency's findings and conclusions, and whether the agency's decision is premised on an erroneous conclusion of law. ProVen also pointed out that, in order to permit meaningful judicial review of an agency's decision, the agency is required to articulate the facts it relied upon to reach its decision and to state the grounds for its conclusions.

On its due process contention, ProVen claimed that Director Chow violated ProVen's due process rights by not reviewing the entire record. ProVen asserted that it was clear from the transcript and the written decision that Director Chow "did not review a substantial portion of the complete record before [the c]ourt." ProVen argued that the complete record was over 3,000 pages, and that "the documents that were *likely reviewed* by the Department in evaluation of ProVen's claims were a few hundred." (Emphasis added). A review of the transcript, according to ProVen, established that Director Chow stifled ProVen's ability to present evidence related to its claims, by moving quickly through the phases and ending the hearing abruptly without giving ProVen the opportunity to adequately address each of its claims. ProVen argued that "[t]he parameters of the hearing

---

[7] In its petition for judicial review, ProVen only sought review of three claims raised before the Department, abandoning the eight additional claims that it had presented during the administrative process.

15

and Director Chow's oversight effectively denied ProVen the required hearing, and, thus, adequate due process." ProVen also asserted, as a procedural deficiency, that the Department's final decision did not address many of ProVen's specific claims and provided sparse factual findings. ProVen contended that the final decision "categorically affirms the underlying decision without providing any evidentiary or legal basis for its conclusion."

Concerning ProVen's three substantive claims—the hazardous materials, stopped work, and field conditions claims—ProVen set forth in detail its reasons for its contention that the Director's denial of those claims "was arbitrary and capricious" and was also "unsupported by the competent, material, and substantial evidence in light of the entire record." For each specific claim, in its 33-page memorandum, ProVen expounded on the facts and legal reasons why it was entitled to additional compensation under the contract. Significantly, ProVen asked the circuit court to reverse the Department's decision, enter judgment in ProVen's favor on its three claims, and remand the matter to the Department for a determination on damages, including any accrued interest thereon and costs.

The City filed an opposition memorandum, addressing the merits of ProVen's damages claims, and arguing that the Director's decision was supported by substantial evidence and supported by the contract and the law. The City also asserted that several of ProVen's arguments were not preserved.

The circuit court held a hearing on ProVen's petition for judicial review on May 2, 2018. At the hearing, ProVen's counsel reiterated that it was seeking judicial review and reversal of the Director's decision. Counsel for ProVen stated that "as a remedy, we ask that you reverse the decision of the director and remand the case to the director with

16

instructions for him to hold a hearing on damages, that liability has been established, clearly, by law, based on undisputed facts, for the three claims."

After reviewing the written memoranda of the parties, the record, and listening to arguments of counsel, the court took a recess to consider the arguments. After the recess, the judge ruled from the bench. Noting that the proceeding was an appeal from a decision of an administrative agency, the court pointed out that under the applicable standard of review, the court was to apply the substantial evidence test to the Director's findings of fact and consider legal conclusions without deference to the agency. The court summarized the nature of the dispute, and the administrative hearing conducted by Director Chow.

With respect to ProVen's due process and procedural contentions, the court commented that Director Chow noted in his written decision that he had reviewed all of the documents present at the hearing, "along with all documents presented at the prior meetings and hearings." The court pointed out that the Director made findings of fact in his decision. The court explained that the Director's findings of fact in the "background" section of his decision had "to be read in conjunction with his findings." The court determined that there were sufficient facts to form the basis of Director Chow's decision, and it was "satisfied that all sides were given sufficient opportunity to present evidence and there was no denial of due process." The court stated that, although the Director's decision "could have been more specific[,]" it nonetheless concluded that the lack of specificity "does not rise to the error of law, nor has [ProVen] presented sufficient evidence to prove the entire record was not reviewed by the director."

Turning to the factual allegations associated with ProVen's three damages claims, the court noted that the contract "stated when and how work would be completed" and referenced how disputes would be resolved. The court concluded that the Director's decision was based upon "competent, substantial, and sufficient facts, and was not arbitrary and capricious nor was there an error of law." The circuit court entered an order dated May 2, 2018 affirming the decision of the Department, stating that the court "is satisfied that the decision of the Department was neither arbitrary nor capricious and was supported by substantial evidence," and there was no error of law.

## E. Court of Special Appeals Proceeding

ProVen appealed the circuit court's order to the Court of Special Appeals. In its brief, ProVen made the same arguments that it had made in the circuit court. ProVen once again argued that the Department's final decision was too conclusory to provide meaningful judicial review. ProVen also contended that the Department violated its right to due process by "conducting an inadequate hearing" and "not reviewing the full record" prior to issuing a final decision. On its three monetary claims, ProVen argued that the Department's final decision on each should be reversed because the decision on each such claim was "arbitrary and capricious, . . . unsupported by substantial evidence on the record, and . . . based on errors of law." In addition to the identical legal arguments presented to and decided by the circuit court, ProVen requested the same relief—that the Department's final decision be reversed, and that the matter be remanded to the Department for "determination of the compensable time extensions due ProVen for each claim," together with accrued interest and costs.

18

The City filed a motion to dismiss as part of its brief. The City noted that under CJ § 12-302(a), there was no statutory right of appeal under the circumstances. Specifically, the City asserted ProVen's circuit court proceeding was an action for judicial review of an agency decision arising under the Baltimore City Charter, Article II, § 4A(g), and that there is no right of appeal to the Court of Special Appeals under the Charter. Given the lack of a statutory right to appeal, the City argued that the court was required to dismiss it. On the merits, the City made the same legal arguments that it previously made in the circuit court.

In its reply brief, for the first time, ProVen asserted that the circuit court proceeding was in the nature of a common law mandamus action, and accordingly, the general appeals statute, CJ § 12-301, authorized appellate review.

In an unreported opinion, the Court of Special Appeals agreed with ProVen's characterization of the matter as a common law mandamus action. *In re ProVen Mgmt., Inc.*, 2020 WL 119651, at *12. The court reasoned that under *Murrell*, 376 Md. 170, "an assertion of a failure to abide by procedural requirements or procedural errors by a local government is in the nature of mandamus[.]" *Id.* As a result, the Court of Special Appeals concluded ProVen's claims that "the Department failed to abide by procedural requirements and made procedural errors[]" were in the nature of a mandamus action and "not subject to the exception from appellate review" set forth in CJ § 12-302(a). *Id.* Turning to the merits of ProVen's argument, the intermediate appellate court concluded that the Director "failed to address adequately ProVen's claims" and issue a final decision upon which there could be meaningful judicial review. *Id.* The court remanded the case

19

to the circuit court with instructions to remand the matter to the Department for further proceedings. *Id.*

The City petitioned for a writ of *certiorari*, which we granted to consider whether the Court of Special Appeals erred in concluding that it had jurisdiction to consider ProVen's appeal.[8]

For the reasons set forth below, we hold that ProVen's circuit court action was, in both form and substance, an action for judicial review of an agency decision arising under the Baltimore City Charter, not a common law mandamus action and, accordingly, did not fall within the general appeals statute, CJ § 12-301. Given that there was no local law or statute that provided a further right of appeal, pursuant to CJ § 12-302(a), the Court of Special Appeals lacked jurisdiction to consider this matter.

---

[8] The questions presented in the petition for writ of *certiorari* were:

1. Did the Court of Special Appeals err when it held that including an assertion of procedural error in a petition for judicial review of an administrative decision turns such a petition, in substance, into a request for a writ of common law mandamus under *Murrell v. Mayor & City Council of Baltimore*, 376 Md. 170 (2003)?

2. Did the Court of Special Appeals err when it held that a petition for judicial review that sought reversal of an administrative decision was, in substance, in the nature of a mandamus action merely because the administrative hearing and administrative decision were alleged to have been performed *in a procedurally inadequate manner*?

(Emphasis in original).

20

## II.

## Standard of Review

The present appeal is a jurisdictional dispute, "pertain[ing] solely to conclusions of law respecting jurisdiction." *Talbot County v. Miles Point Prop., LLC*, 415 Md. 372, 384 (2010). Accordingly, we review *de novo* the Court of Special Appeals' conclusion that it had jurisdiction to hear ProVen's appeal.

## III.

## Discussion

Before we address the parties' specific contentions in this case, it is instructive to review the governing principles and statutes addressing appellate jurisdiction generally. "The right to an appeal is not a right required by due process of law, nor is it an inherent or inalienable right." *Criminal Injuries Comp. Bd. v. Gould*, 273 Md. 486, 500 (1975) (citing *Lindsey v. Normet*, 405 U.S. 56 (1972)) (additional citations omitted). Accordingly, unless constitutionally authorized, appellate jurisdiction "is determined entirely by statute," and therefore, a right of appeal only exists to the extent it has been "legislatively granted." *Gisriel v. Ocean City Bd. of Supervisors of Elections*, 345 Md. 477, 485 (1997) (citing *Maryland-Nat'l Capital Park & Planning Comm'n v. Smith*, 333 Md. 3, 7 (1993)). For this reason, the starting point for our jurisdictional inquiry begins with an examination of the relevant provisions of the Maryland Code and the Baltimore City Charter.

Section 12-301 of the Courts and Judicial Proceedings Article, which is the general statute authorizing appeals from the circuit courts, provides that "a party may appeal from a final judgment entered in a civil or criminal case by a circuit court." The section goes on

21

to specifically grant a right of appeal "from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law." CJ § 12-301. Section 12-302(a) of the Courts and Judicial Proceedings Article provides such a limitation on the broad right to appellate review set forth in CJ § 12-301. That section denies a right of appeal "from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of the District Court, an administrative agency, or a local legislative body[,]" unless "a right to appeal is expressly granted by law." CJ § 12-302(a).

In this instance, ProVen's right to appeal arises from the applicable provisions of the Baltimore City Charter, Article II, § 4A(g), which provides for judicial review "on the record by a court of competent jurisdiction." In other words, the Baltimore City Charter provides a right to judicial review by the circuit court. No provision of the Baltimore City Charter authorizes an appeal to the Court of Special Appeals. If the substance of the circuit court proceeding was an administrative appeal of Director Chow's decision, the Court of Special Appeals had no jurisdiction to consider the matter under CJ § 12-302(a), and the appeal should have been dismissed. Under our case law, however, if we examine the nature of the proceeding as a whole and determine that, regardless of the caption or label, the substance of the case is in the nature of an original action seeking a writ of common law mandamus, we have held that the action falls within the general appeals statute, CJ § 12-301.

We have discussed and applied these principles in three cases. *See Murrell*, 376 Md. 170; *Prince George's County v. Beretta U.S.A., Corp.*, 358 Md. 166 (2000); *Gisriel*,

22

345 Md. 477. In this case, both parties rely upon these cases to support their respective positions. Specifically, the City relies upon *Beretta* to support its position that the nature of ProVen's circuit court action was for judicial review of an agency decision, which is precluded from appellate review under CJ § 12-302(a). By contrast, ProVen argues that the Court of Special Appeals correctly applied our holding in *Murrell* and determined that the nature of its case was, in substance, a common law mandamus action, and therefore appealable under CJ § 12-301. Because these cases are central to our analysis and holding here, we discuss them in detail below. But first, we describe the general nature of an administrative appeal to the circuit court, as well as a common law mandamus action arising under the original jurisdiction of the circuit court, including the similarities as well as the differences between the two.

### A. *Judicial Review of Administrative Agency Decisions*

Judicial review of an agency decision arises pursuant to a statute or local law or ordinance. The Maryland Rules governing judicial review of administrative agency decisions are set forth in Chapter 2 of Title 7. The matter is generally heard on the record, with the parties to the proceeding submitting written memoranda. Md. Rules 7-206, 7-207. After a hearing, the court has broad discretion to "dismiss the action for judicial review or . . . affirm, reverse, or modify the agency's order or action, remand the action to the agency for further proceedings," or order relief that is "an appropriate combination of the above." Md. Rule 7-209.

The scope of judicial review of administrative agency decisions is limited. For factual findings, judicial review is limited to the application of the "substantial evidence

23

test," which has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bullock v. Pelham Wood Apartments*, 283 Md. 505, 512 (1978) (citing *Snowden v. Mayor and City Council of Baltimore*, 224 Md. 443, 448 (1961)). As we have routinely emphasized, in applying the substantial evidence test, a "court should not substitute its judgment for the [e]xpertise of those persons who constitute the administrative agency from which the appeal is taken." *Id.* at 513 (citation omitted). Additionally, we review the agency's decision in the light most favorable to the agency, since "decisions of the agency are prima facie correct." *Id.* (citation omitted). On the other hand, "a reviewing court is under no constraints in reversing an administrative decision which is premised solely upon an erroneous conclusion of law." *People's Counsel v. Maryland Marine Mfg. Co.*, 316 Md. 491, 497 (1989).

In *United Steelworkers v. Bethlehem Steel Corp.*, 298 Md. 665, 679 (1984), we explained a key distinction between judicial review of an administrative decision as opposed to appellate review of a trial court judgment. In the latter context, "the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court." *United Steelworkers*, 298 Md. at 679. By contrast, in undertaking judicial review of an agency action, "the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency." *Id.*

The requirement that an administrative agency set forth its findings of fact and conclusions of law is two-fold. First, it "apprise[s] the parties of the basis for the agency's

24

decision[.]" *Mehrling v. Nationwide Ins. Co.*, 371 Md. 40, 63 (2002); *see also Blue Bird Cab Co. v. Md. Dep't of Employment Sec.*, 251 Md. 458, 466 (1968) (observing that "a fundamental requirement of due process of law in a quasi-judicial proceeding is the right of the parties to be apprised of the facts relied upon by the tribunal in its decision"). Second, it "facilitate[s] judicial review." *Mehrling*, 371 Md. at 63. A reviewing court's limited review of the agency's decision highlights not only the importance, but the *necessity* that the administrative agency render meaningful findings of fact and conclusions of law to support its decision. Indeed, judicial review cannot occur in the absence of an administrative agency's stated findings of fact and conclusions of law to support its decision. *See Forman v. Motor Vehicle Admin.*, 332 Md. 201, 220–21 (1993) ("Without findings of fact on all material issues, and without a clear statement of the rationale behind the [final decision maker's action], a reviewing court cannot properly perform its function."); *United Steelworkers*, 298 Md. at 679 ("We must know what a decision means before the duty becomes ours to say whether it is right or wrong.") (citation and internal quotations omitted).

In cases where the administrative agency has not rendered sufficient or meaningful factual findings upon which a reviewing court can undertake judicial review, we have remanded the case to the administrative agency for the purpose of having the deficiency remedied. *See, e.g.*, *Mehrling*, 371 Md. at 67 (in order to permit meaningful judicial review, the Court remanded the case to the administrative law judge "to prepare legally adequate findings of fact and conclusions of law based on the administrative record as a whole"); *Forman*, 332 Md. at 222 (explaining that because the administrative law judge

25

"failed to resolve important factual issues and . . . make clear what his decision means," the case was remanded to the administrative agency for further proceedings) (internal quotations omitted); *Bucktail, LLC v. County Council of Talbot County*, 352 Md. 530, 558–59 (1999) (remanding a matter to the county council to make meaningful findings of fact where county body, acting in an adjudicative role, recited statutory criteria and made boilerplate resolutions that precluded judicial review); *Harford County v. Earl E. Preston, Jr., Inc.*, 322 Md. 493, 504–05 (1991) (remanding a denial of a special exception application to the county board of appeals where the board failed to make findings of fact to support its final decision). Given the *necessity* that an agency make meaningful findings of fact and conclusions of law to support its decision, and a reviewing court's inability to exercise judicial review without it, where the administrative decision or order fails to supply detailed findings of fact or conclusions of law, the appropriate disposition is for the reviewing court to remand the matter to the administrative agency for further proceedings.

### B. Common Law Mandamus[9]

"It is well established that common law mandamus is an extraordinary remedy that is generally used to compel inferior tribunals, public officials or administrative agencies to

---

[9] Our discussion in this case is limited to common law mandamus actions. Given ProVen's reliance on cases involving administrative mandamus, which have no application here, we briefly mention the distinction. As we explained in *Wilson v. Simms*, 380 Md. 206, 228 (2004), there are two different types of mandamus actions. Common law mandamus seeks the judicial enforcement of ministerial non-discretionary acts. Administrative mandamus is a remedy that authorizes judicial review of administrative decisions "where there is both a lack of an available procedure for obtaining review *and* an allegation that the action complained of is illegal, arbitrary, capricious or unreasonable." *Id.* (emphasis in original) (quotations and citation omitted); *see also* Maryland Rule 7-401(a) (explaining that the rules applicable to administrative mandamus "govern actions

perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which duty the party applying for the writ has a clear legal right." *Falls Road Community Ass'n v. Baltimore County*, 437 Md. 115, 139 (2014) (citations and internal quotations omitted). Or stated another way, "[a] common law writ of mandamus is one where the relief sought involves the traditional enforcement of a ministerial act (a legal duty) by recalcitrant public officials." *South Easton Neighborhood Ass'n, Inc. v. Town of Easton*, 387 Md. 468, 477 n.3 (2005). "Ministerial acts are duties in respect to which nothing is left to discretion and are distinguished from those allowing freedom and authority to make decisions and choices." *Miles Point Prop., LLC*, 415 Md. at 397 (cleaned up).

## C. Distinctions Between Relief

It can be difficult to differentiate between an appeal of an administrative agency decision arising under a statute or local law (where the petitioner asserts that the decision is unsupported by substantial evidence and is arbitrary and capricious), and a common law mandamus action involving an exercise of a court's original jurisdiction (where the

---

for judicial review of a quasi-judicial order or action of an administrative agency *where review is not expressly authorized by law*)." (Emphasis added). ProVen argues that *Criminal Injuries Compensation Board v. Gould*, 273 Md. 486 (1975) supports its position that there is a "common law right of review" arising from an arbitrary, illegal, capricious, and unreasonable action by an administrative agency. ProVen's reliance on *Gould* is misplaced. *Gould* involved the remedy of administrative mandamus arising from the fact that there was no statutory right of judicial review. Our case law is clear that the "inherent power of a court to review an administrative agency's determination," *i.e.*, administrative mandamus, "may not be utilized when the statutory right of judicial review is available." *See, e.g.*, *State Dep't of Assessments and Taxation v. Clark*, 281 Md. 385, 402 (1977). In this case, because the Baltimore City Charter provided a specific right of judicial review to the circuit court, cases involving administrative mandamus are not applicable here.

petitioner asserts that the decision-maker failed to perform a ministerial duty). In many cases, the distinction between the two types of actions may be evident from the nature of the relief sought. In a common law mandamus action, the petitioner is seeking narrow relief—a writ to compel an official to perform a ministerial duty that the official failed to perform. By contrast, in an action for judicial review of an administrative agency decision, a petitioner may obtain a variety of relief, including, where appropriate, a remand for the purpose of the administrative decision-maker providing a sufficient explanation of the facts to support his or her decision in order to enable appropriate judicial review on the record. In other words, common law mandamus relief arises from an official's *failure to perform the duty at all*, whereas in a statutory judicial review action, relief may include a remand for further proceedings before the administrative agency arising from the agency's *failure to perform the duty well*.

### D. Our Jurisprudence Examining the Distinction Between Cases Sounding in Common Law Mandamus and Statutory Review of Administrative Agency Decisions

In *Gisriel*, *Beretta*, and *Murrell*, Judge John C. Eldridge, writing for this Court, applied these principles to determine, in each instance, whether the nature and substance of the particular action was one for judicial review of an agency decision for which there was no statutory right to appellate review under the particular local law in question,[10] or

---

[10] It is worth repeating that the jurisdictional limitation set forth in CJ §12-302(a) only applies where the statute or local law providing for judicial review by a circuit court is without an additional right to appeal to the Court of Special Appeals. Given that most administrative agency proceedings are subject to the Administrative Procedures Act, Title 10 of the State Government Article ("SG"), which provides a statutory right to appeal to the Court of Special Appeals, *see* SG § 10-223(b), the jurisdictional limitation contained

28

whether it was a common law mandamus action that was capable of appellate review under the general appeals statute. Given the parties' and the Court of Special Appeals' reliance on these cases, we discuss them here.

*Gisriel v. Ocean City Board of Supervisors of Elections*

In *Gisriel*, Mr. Gisriel challenged the refusal of the City Council of Ocean City to hold a referendum election on a newly enacted comprehensive zoning ordinance. 345 Md. at 480. After the City Council enacted the zoning ordinance, Mr. Gisriel circulated and obtained signatures on a referendum petition. *Id.* at 480–81. Under the applicable provisions of the Ocean City charter, the referendum petition was required to contain the signatures of at least "20% of the qualified voters of Ocean City." *Id.* at 481 (internal quotations omitted). The Ocean City Supervisor of the Board of Elections ("Board") compared the names on the petition with the city's list of registered voters on the date the petition was filed, and determined that the petition contained the signatures of only 19.31% of the registered voters—a figure less than the 20% threshold requirement. *Id.* at 482. Mr. Gisriel requested an opportunity to be heard before the City Council under the applicable provisions of the charter, in order to present contradictory evidence to the Board's findings. *Id.* Mr. Gisriel argued that, under the applicable provisions of the charter, the Board was required to purge certain unqualified voters from the voter registration list, the effect of which would have made the referendum petition comply with the 20% qualified voter

in CJ § 12-302(a) has no application to administrative appeals that are governed by that statute.

29

requirement. *Id.* at 483. The City Council rejected Mr. Gisriel's submission and upheld the recommendation of the Board. *Id.* at 484.

Mr. Gisriel sought judicial review in the Circuit Court for Worcester County, pursuant to the provisions of the Ocean City charter, which gave a person aggrieved by a decision of the Board an initial right to appeal to the City Council, with a right to appeal the City Council's decision to the circuit court. *Id.* at 484 n.8. The charter did not provide for additional review by the Court of Special Appeals. *Id.*

The circuit court agreed with Mr. Gisriel and ordered the Board "to delete from the Ocean City registered voter list the names of unqualified voters before determining the percentage of voters who had signed the petition." *Id.* at 484. The Board appealed the circuit court's decision to the Court of Special Appeals, notwithstanding the Ocean City charter's limitation on appellate review. *Id.* at 497. The Court of Special Appeals concluded it had jurisdiction to hear the appeal and reversed the circuit court. *Id.* at 484–85. We granted *certiorari* and affirmed the Court of Special Appeals' conclusion that it had jurisdiction to hear the Board's appeal but analyzed the jurisdictional issue differently from the intermediate appellate court. *Id.* at 485, 496.

We began our analysis by noting the basic premise that, "appellate jurisdiction, except as constitutionally authorized, is determined entirely by statute, and that, therefore, a right of appeal must be legislatively granted." *Id.* at 485 (citations omitted). Accordingly, we explained that "resolution of the jurisdictional issue depends upon an examination of the relevant provisions of the Maryland Code and of Ocean City's legislative enactments." *Id.* We first noted that neither the Ocean City charter nor any city ordinance "authorize[d]

30

an appeal to the Court of Special Appeals under the circumstances here." *Id.* at 486. With

no right to appeal granted by local law or ordinance, we turned to the general appeals statute

to determine whether such a right existed.

In analyzing whether a statutory right of appeal existed under the facts of this case,

we examined the history of the general appeals statute, CJ § 12-301, as well as the

limitations on the right to appeal set forth in CJ § 12-302(a). *Id.* at 487–90. We noted that

the history of CJ § 12-302(a) "discloses that the statute represents a partial codification of

the principle that the general appeals statute does not authorize an appeal from a circuit

court's judgment when that court is exercising a special limited statutory jurisdiction as

opposed to a more traditional common law-type of jurisdiction." *Id.* at 493. We pointed

out that, although "[i]n a technical, but to some extent jurisprudential, sense, a court does

not exercise 'appellate jurisdiction' when reviewing the decision of an administrative

agency or legislative body[,]" courts have commonly treated such "kinds of actions as

being in the nature of appeals and to refer to them as 'administrative appeals.'" *Id.* at 496

(quoting *Department of Gen. Servs. v. Harmans Assocs.*, 98 Md. App. 535, 542 n.2 (1993)).

Accordingly, we determined that the Legislature intended to encompass circuit court

review of the decisions of administrative and local legislative bodies within the

jurisdictional limitation established by CJ § 12-302(a). *Id.* As such, we held that "when a

circuit court proceeding in substance constitutes ordinary judicial review of an adjudicatory

decision by an administrative agency or local legislative body, pursuant to a statute,

ordinance, or charter provision, and the circuit court renders a final judgment within its

31

jurisdiction, § 12-302(a) is applicable," and therefore, "an appeal to the Court of Special Appeals is not authorized by § 12-301." *Id.* (citation omitted).

By contrast to appeals of administrative agency decisions, we explained that a common law writ of mandamus action is an original action. *Id.* at 497. We observed that, "[b]oth before and after the enactment of § 12-302(a), this Court has regularly exercised appellate jurisdiction in mandamus actions against administrative agencies and officials." *Id.* at 499 (citations omitted). As part of our consideration of whether a pleading seeks judicial review of administrative agency decisions (and is therefore subject to jurisdictional limitations) or a common law mandamus action (for which appellate jurisdiction may be exercised), we explained that our analysis does not end by examining the form of the proceeding. *Id.* at 500. We stated that "even where a particular action against an administrative agency was allegedly brought under a statutory judicial review provision, and did not purport to be a mandamus action, this Court has looked to the substance of the action, has held that it could be treated as a common law mandamus or certiorari action, and has exercised appellate jurisdiction." *Id.* at 500 (citing *Criminal Injuries Comp. Bd.*, 273 Md. at 500–06).

We applied these principles to the pleading that had been filed by Mr. Gisriel. Looking at the substance of his petition for judicial review, we focused on the relief sought by Mr. Gisriel—an order directing the Board to perform the non-discretionary duty of deleting, from the Ocean City registered voting list, the names of unqualified voters before determining the percentage of voters who had signed the petition. *Id.* We explained that any judicial review action would not arise until a court determined in the first instance

32

whether the Board must perform the duty. *Id.* at 498. Accordingly, we concluded that Gisriel's action was in substance a common law mandamus action, and therefore, the Court of Special Appeals and this Court had jurisdiction to entertain the appeal under CJ § 12-301. *Id.* at 500.

*Prince George's County v. Beretta U.S.A. Corp.*

We revisited the differences between a statutory judicial review action and a common law mandamus action in *Beretta*, 358 Md. 166. In that case, an employee filed an employment discrimination claim against his employer, Beretta, with the Prince George's County Human Relations Commission ("Commission"). *Id.* at 170. The employee's claim was considered by the Commission over the course of a seven-day hearing. *Id.* After the first five days of hearings, two of the three panel members were no longer available and two new panel members were substituted for them. *Id.* at 170. The Commission rendered a final decision rejecting Beretta's defenses and arguments, upheld the employee's retaliation claims, and awarded him lost wages, as well as damages for humiliation and embarrassment. *Id.*

Pursuant to the applicable provisions of the Prince George's County Code, Beretta filed a petition for judicial review of the Commission's decision in the circuit court. *Id.* at 170–71. In its petition, Beretta challenged the Commission's decision on several grounds. *Id.* at 171. Beretta asserted that the Commission's finding of retaliation discrimination was not supported by substantial evidence, the employee had failed to introduce sufficient evidence to support an award of lost wages, the Commission did not adequately explain its damages calculation, and the damages for humiliation and embarrassment were not

33

supported by substantial evidence. *Id.* Beretta also contended that the substitution of two panel members, who had not heard the evidence presented over the first five days of hearings, violated the Commission's rules. *Id.* Finally, Beretta argued that the provision of the Prince George's County Code authorizing "humiliation and embarrassment" damages was invalid on several grounds. *Id.* After considering memoranda from the parties, the circuit court affirmed the decision of the Commission. *Id.*

Beretta appealed the matter to the Court of Special Appeals, raising essentially the same issues that it raised in the circuit court. *Id.* During oral argument, the court *sua sponte* raised the issue of whether the circuit court's judgment was appealable in light of the jurisdictional limitations set forth in CJ § 12-302(a). *Id.* The Court of Special Appeals held that under our reasoning in *Gisriel*, Beretta was entitled to appeal certain issues— namely the validity of the provision of the Prince George's County Code authorizing "humiliation and embarrassment" damages and whether the Commission violated its rules by substituting two panel members for two former members—reasoning that those claims "could have [been] brought" as a declaratory judgment action. *Id.* at 170, 176. However, the intermediate appellate court concluded that Beretta was barred under CJ § 12-302(a) from appealing certain claims related to the sufficiency of the evidence before the Commission, reasoning that those claims were the type traditionally brought within a petition for judicial review. *Id.* at 171–72, 177.

We granted *certiorari*, and concluded that, although the case presented "important questions" concerning a charter county's authority to enact a statute enabling a county

administrative agency to award money damages for "humiliation and embarrassment[,]" we could not reach the issue because the circuit court judgment was not appealable. *Id.* at 167.

We started our analysis by summarizing the principles we articulated in *Gisriel*, explaining that the "resolution of the appellate jurisdictional issue depends upon an examination of the relevant provisions of the Maryland Code and of the pertinent local legislative enactments." *Id.* at 174 (citing *Gisriel*, 345 Md. at 485) (cleaned up).

After determining that there was no statutory right to appeal under the Prince George's County local laws, we examined Beretta's action to determine whether it was a petition for judicial review of an administrative agency decision. *Id.* at 174–75. Concluding that it was, we observed that the circuit court "was engaged in ordinary judicial review of a final adjudicatory decision by an administrative agency[]" pursuant to a "locally enacted statute," and had "applied the normal criteria applicable under Maryland law for judicial review of adjudicatory administrative decisions and affirmed the agency's decision." *Id.* at 175–76 (footnote omitted). Accordingly, we concluded that the action fell within CJ § 12-302(a) and was therefore not appealable. *Id.* at 176.

We rejected the Court of Special Appeals' attempt to parse out claims that *could have been litigated* in other types of proceedings (such as a declaratory judgment action or common law mandamus action) from a petitioner's traditional judicial review of "substantial evidence claims" as being unsupported "by the *Gisriel* opinion and . . . inconsistent with numerous decisions by this Court." *Id.* at 177. We observed that CJ § 12-302(a) "does not relate to what issues may be considered on appeal and what issues may not be considered. Rather, the language of the statute, and the case law on which the statute

35

was based, preclude *any* appeal to the Court of Special Appeals in a particular type of case." *Id.* (emphasis added). We explained that "[t]he cases involving the non-appealability doctrine discussed in *Gisriel* disclose that*, as long as a circuit court is acting within its special statutory jurisdiction, the limitation upon the right to appeal is applicable regardless of the issues being raised*." *Id.* at 180 (emphasis added). We pointed out that "[a]ppeals have been precluded in cases involving legal issues, constitutional issues, issues concerning procedural irregularity, and issues about the lawful composition of an administrative agency." *Id.* Comparing the substance of the claims and relief sought by Beretta as a whole, we concluded that the matter "was a typical statutory judicial review action," and accordingly, CJ § 12-302(a) precluded an appeal. *Id.* at 183.

### *Murrell v. Mayor & City Council of Baltimore*

Three years after we decided *Beretta*, we once again revisited the distinction between judicial review of agency decisions subject to the limitation in CJ § 12-302(a) and common law actions that fall within the general appeals statute, CJ § 12-301, in *Murrell*, 376 Md. 170. In that case, we considered whether a circuit court's judgment upholding an administrative decision by the Baltimore City Department of Housing and Community Development ("Housing Department") to raze certain buildings was appealable to the Court of Special Appeals. *Id.* at 172. The Housing Department had issued two notices of housing code violations to Mr. Murrell, for two separate properties that he owned, and required that the violations be corrected by a certain date. *Id.* at 175. After a condemnation notice was posted on one of the properties, Mr. Murrell met with a Housing Department inspector and advised the inspector of his plans to renovate the properties. *Id.* at 176–78.

36

Mr. Murrell then filed an appeal of the condemnation notice, obtained permits for the renovation work, and hired an architect, who issued a report stating that the buildings were structurally sound. *Id.* at 178–79.

The Housing Department held a hearing on Mr. Murrell's request for a hearing on the condemnation notices. *Id.* at 179. Under the Baltimore City Code, the hearing was required to be undertaken by the designated "Building Code Official." *Id.* at 174. Mr. Murrell was represented by counsel and presented evidence, including testimony from his architect. *Id.* at 179–80. The only "record" of the hearing was a single piece of paper containing some handwritten notes. *Id.* at 180.

On the same day of the hearing, Mr. Murrell was notified by a letter from the Commissioner of the Housing Department of the "results of the hearing" and the Commissioner's "concurrence with the decision by the Hearing Officer." *Id.* The record revealed that the letter was returned "unclaimed" and was not received by Mr. Murrell. *Id.* at 181. Additionally, there was no record that the Hearing Officer actually rendered a decision. *Id.*

Mr. Murrell filed an action to review the Housing Department's "decision" in the circuit court, arguing that the Housing Department failed to comply with the mandated procedures set forth in the Building Code, and that its actions violated Article 24 of the Maryland Declaration of Rights and Article III, § 40 of the Maryland Constitution. *Id.* Following a hearing, the circuit court issued an order affirming the Housing Department's decision. *Id.*

Mr. Murrell filed a notice of appeal to the Court of Special Appeals. *Id.* at 182. The Court of Special Appeals granted the City's motion to dismiss, after determining that the circuit court action was, in all respects, "an ordinary statutory judicial review action." *Id.* at 183. Mr. Murrell filed a petition for *certiorari*, arguing that the circuit court action was "in substance a common law mandamus action and was appealable under the principles set forth in *Gisriel*." *Id.* (cleaned up). We agreed with Mr. Murrell.

We noted that the critical question in the case was whether the suit was "a statutory judicial review action encompassed by § 12-302(a) or whether the suit [could] legitimately be treated as a common law mandamus action." *Id*. at 185. We explained that, under our holding in *Gisriel*, CJ § 12-302(a) "is applicable when a circuit court proceeding *in substance* constitutes *ordinary judicial review* of an adjudicatory decision by an administrative agency or legal legislative body, pursuant to a statute, ordinance, or charter provision," and that the "manner in which a plaintiff styled the action, and the plaintiff's reliance upon a statutory review provision, did not determine the nature of his action[.]" *Id.* at 193 (emphasis in original) (internal quotations omitted). We pointed out that in *Gisriel*, the nature of the petitioner's action was to seek the enforcement of the Board's "non-discretionary duty to delete from the Ocean City registered voter list the names of unqualified voters." *Id.* (internal quotations omitted). Because the substance of the relief sought in *Gisriel* involved a determination of whether the Board violated a non-discretionary duty, we explained that we determined that the substance of the action was a common law mandamus action for which appellate jurisdiction would arise under CJ § 12-301. *Id.* at 193–94.

In juxtaposition with our holding in *Gisriel*, we noted that "*Beretta* was clearly a statutory judicial review action, involving an employee's claim of discrimination in violation of local law, an administrative hearing at which evidence was introduced and transcribed, administrative findings of fact and conclusions of law, and judicial review pursuant to a local ordinance." *Id.* at 194. We explained that our conclusion concerning the "non-appealability rule of § 12-302(a) depended upon the overall 'substance' of the circuit court action. The issue is whether the action, as a whole, 'should in substance be viewed as a mandamus action' or whether it more resembles 'a typical statutory judicial review action.'" *Id.* at 195 (cleaned up).

Applying these principles to the issues presented by Mr. Murrell in the circuit court, we determined that the case "in substance" was like *Gisriel* and not *Beretta*. *Id.* at 196. We explained that "[t]he gist of petitioner's complaints, at this stage, is a failure of the [Housing] Department . . . to perform several non-discretionary mandatory duties under the Baltimore City Code and principles of Maryland administrative law." *Id.* We concluded that there could be no judicial review of the hearing officer's decision because there was no transcript, no record (other than one page of handwritten notes), and no written decision. *Id.* Under the facts of the case, we determined that the wholesale failure to comply with hearing procedures and requirements under the Baltimore City Code and traditional requirements necessary for undertaking judicial review, rendered the substance of the petitioner's action a common law mandamus action as opposed to a petition for judicial review. *Id.* at 196–98.

39

### E. Application of These Principles Here

Turning to the instant case, we must determine whether ProVen's case, "as a whole, 'should in substance be viewed as a mandamus action' or whether it more resembles 'a typical statutory judicial review action.'" *Murrell*, 376 Md. at 195 (cleaned up). The City argues that the Court of Special Appeals erred in concluding that ProVen's petition for judicial review was, in substance, a petition for a writ of common law mandamus, and therefore, capable of appellate review under the general appeals statute, CJ § 12-301. The City contends that the Court of Special Appeals misinterpreted our holding in *Murrell*, by suggesting that any statutory judicial review petition is transformed into a common law mandamus action simply because the petitioner asserts a procedural error or due process violation as part of its petition. According to the City, the Court of Special Appeals ignored our holding in *Beretta*, when it "pulled apart" ProVen's appeal to examine its components, instead of considering the nature of the action as a whole.

On the other hand, ProVen argues that the Court of Special Appeals correctly determined that it had jurisdiction to consider this matter under CJ § 12-301 because its pleading was, in substance, a petition for common law mandamus. To support its characterization of the action as one seeking common law mandamus as opposed to a petition for judicial review, ProVen focuses on its procedural claims—specifically, that the Director failed to: review the entire record; provide ProVen with an adequate opportunity to address its claims; and provide a sufficient factual basis for his final decision. ProVen contends that each of these allegations turn on the Director's failure to perform non-discretionary, ministerial duties. As a result, ProVen posits, the circuit court proceeding

40

was in the nature of a common law mandamus action. ProVen asserts that the Court of Special Appeals correctly relied upon *Murrell* for its conclusion that its petition was one seeking a writ of common law mandamus.

Applying the principles articulated in *Gisriel*, *Beretta*, and *Murrell*, we agree with the City. We conclude that ProVen's petition was, in both form and substance, a petition for judicial review of a decision of an administrative agency arising under the Baltimore City Charter. As set forth more fully in Part I.D., *supra*, ProVen's memorandum in support of its petition presented four questions and supporting arguments as to why the Department's final decision was erroneous. The first contention was that the Department's final decision was "defective due to a violation of due process under law." Three of ProVen's four contentions related to its substantive compensable claims—its hazardous materials, stopped work, and field conditions claims—in which ProVen asserted traditional administrative agency-type errors based upon the substantial evidence test. Reviewing the circuit court proceeding in its entirety, it is clear that the allegations raised by ProVen are the quintessential types of errors asserted in a traditional statutory petition for judicial review of an administrative agency decision. The relief sought by ProVen also reinforces the nature of this case as one seeking traditional judicial review. ProVen did not seek a writ or order requiring the Director to perform a ministerial duty.[11] Instead, ProVen sought a judicial determination overturning the Director's decision on its substantive monetary

---

[11] As noted earlier, for the first time in its reply brief filed in the Court of Special Appeals, ProVen attempted to recast its relief as requesting a remand to correct procedural errors and deficiencies. Of course, this is not the relief that ProVen sought in the circuit court or in its initial appellate brief that was filed prior to the City's motion to dismiss.

claims with a limited remand for a determination of damages—relief that is consistent with judicial review of an agency decision.

In concluding that appellate jurisdiction existed in this case, relying on our analysis in *Murrell*, the Court of Special Appeals determined that, because ProVen's claims included "an assertion of a failure to abide by procedural requirements or procedural errors by a local government[,]" they were "in the nature of mandamus and . . . not subject to the exception from appellate review provided for circuit court orders reviewing administrative decisions." *In re ProVen Mgmt., Inc.*, 2020 WL 119651 at *12. To support its conclusion that ProVen's contentions were consistent with mandamus relief, as opposed to claims traditionally arising within the context of a petition for judicial review, the intermediate appellate court reasoned that its "review of the record convinces us that the Director failed to conduct a procedurally adequate hearing and failed to provide adequate reasons for his decision." *Id*. The court further determined that "[t]he hearing transcript and the record before us convince us that the Director failed to address adequately ProVen's claims" and that "[t]he Director's final decision consisted of mere conclusions, lacked specific findings of fact, and failed to address each of ProVen's claims." *Id*. The Court of Special Appeals stated that, "[i]mportantly, we note our inability to identify the specific records considered by Director Chow. It is impossible to discern the factual basis for the Department's ruling on ProVen's claims. As a result, the Director's decision was arbitrary, capricious, and unlawful." *Id*.

We disagree with the Court of Special Appeals' reliance on *Murrell* to support a conclusion that ProVen's petition was a common law mandamus action. The facts of *Murrell* are very different from the facts of this case. In *Murrell*, there was no transcript,

42

no record of the administrative proceeding, and no final decision by the hearing officer upon which judicial review could be undertaken.[12]

By contrast, here, the proceeding was recorded, a transcript was prepared, exhibits were entered into the record, ProVen's witnesses provided statements to support its claims, and Director Chow's record included the 3,000 pages of documents that were part of the OEC record. At the outset of the hearing, Director Chow stated that he had the record of the exchanges, discussions, and emails and noted that he intended to issue a decision based upon the information that he had received prior to the hearing, and any additional information that he received during the hearing. Director Chow prepared a written decision with findings of fact and conclusions of law. In his written decision, he commented that he "considered all the argument and testimony presented on behalf of ProVen and the City" at the hearing, and that he had "also reviewed and considered all of the documents presented to me by ProVen and OEC, including the documents presented and discussed at the hearing by both OEC and ProVen." Director Chow stated that "[a]ll documents presented to me were admitted into the record and considered by me." Based upon his "on the record" proceeding, Director Chow found "no reason to overturn OEC's prior denial of the claim[.]" Clearly, there was a record in this case upon which the circuit court could, and did, conduct a judicial review.

---

[12] Even with the extreme procedural deficiencies presented in *Murrell*, this Court was not unanimous in its conclusion that the proceeding was one seeking mandamus relief. *See Murrell v. Mayor and City Council of Baltimore*, 376 Md. 170, 199 (2003) (Wilner, J., dissenting, joined by Harrell, J.) (analyzing the proceeding as a petition for judicial review, and asserting that the Majority's holding was inconsistent with *Prince George's County v. Beretta*, 358 Md. 166 (2000)). In this case, we decline to extend our analysis and holding in *Murrell* beyond the unique procedural deficiencies presented in that case.

43

The Court of Special Appeals appeared to find fault with Director Chow's sparse factual findings and conclusory statements contained within his written decision. That is a fair criticism. Indeed, in undertaking judicial review, the circuit court might have concluded that there were insufficient findings of fact to support Director Chow's decision and determined that a remand was appropriate under Maryland Rule 7-209 for the Director to more fully explain his decision. However, such relief is commonly requested and granted within the context of traditional judicial review of an administrative agency decision. *See, e.g.*, *Mehrling*, 371 Md. at 67; *Forman*, 332 Md. at 222; *Harford County*, 322 Md. at 505. If the circuit court had determined (which it did not here) that there were inadequate facts or legal conclusions upon which to review the agency's decision, such a determination would not have transformed the petition for judicial review into a common law mandamus proceeding. It would have simply meant that a remand was appropriate under Maryland Rule 7-209 for further proceedings.

Nor is a statutory petition for judicial review action converted into a common law mandamus action simply because the petitioner has included due process assertions or allegations of procedural deficiencies. In determining whether a petition for a judicial review should instead be treated as a common law mandamus action, we look at the entire action. As *Beretta* instructs, we do not isolate each assertion made by petitioner to determine whether the particular claim *could* have been brought in another form, such as a common law mandamus action, or a declaratory judgment action. As we noted in *Beretta*, judicial review of administrative agency decisions often includes assertions of due process violations, procedural errors, lack of substantial evidence to support the agency's decision,

44

or other shortcomings in the process. Including procedural arguments in a petition for judicial review does not transform the case into a common law mandamus action. *See, e.g.*, *Rogers v. Eastport Yachting Ctr., LLC*, 408 Md. 722, 730–31, 734 (2009) (holding that the inclusion of a lack of notice argument did not create appellate jurisdiction); *Dvorak v. Anne Arundel Cty. Ethics Comm'n*, 400 Md. 446, 456–59 (2007) (holding that the inclusion of an administrative jurisdiction argument did not create appellate jurisdiction).

Unless a review of the entire action leads to the conclusion that the substance of the action, including the relief sought, is in the nature of a common law mandamus action, our case law does not permit us to recharacterize the case as such—thereby creating appellate jurisdiction—simply because we would not reach the same result as the result reached by the circuit court after conducting its judicial review.

## IV.

### Conclusion

The Court of Special Appeals erred in concluding that it had jurisdiction to consider this appeal. ProVen's petition was, in form and substance, a petition for judicial review of an administrative agency decision arising under the applicable provisions of the Baltimore City Charter. There was no right to appeal arising under statute or local law. Accordingly, CJ § 12-302(a) barred appellate review of the circuit court's decision.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO DISMISS THE APPEAL. COSTS IN THIS COURT AND**

**THE COURT OF SPECIAL APPEALS TO BE PAID BY PROVEN MANAGEMENT, INC.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/8a20cn.pdf