*Jennifer Rowe v. Maryland Commission on Civil Rights*, No. 17, September Term, 2022. Opinion by Biran, J.

**APPELLATE JURISDICTION** – The Supreme Court of Maryland held that there is no express statutory grant of review in the Appellate Court of Maryland of circuit court rulings on judicial review of no-probable-cause findings by the Maryland Commission on Civil Rights (the "Commission"). Section 20-1005(d)(2) of the State Government Article is unambiguous. It expressly references section 10-222 of the State Government Article – the Administrative Procedure Act provision regarding judicial review of agency decisions in circuit courts – and nothing else. Thus, the plain language of the statute demonstrates that the General Assembly intended to confine judicial review of Commission no-probable-cause determinations to the circuit court.

Circuit Court for Baltimore City
Case No. 24-C-20-003503
Argued: December 5, 2022

IN THE SUPREME COURT

OF MARYLAND\*

No. 17

September Term, 2022

JENNIFER ROWE

v.

MARYLAND COMMISSION ON
CIVIL RIGHTS

Fader, C.J.
Watts
Hotten
Booth
Biran
Gould
Eaves,

JJ.

Opinion by Biran, J.
Fader, C.J., and Watts and Booth, JJ., dissent.

Filed: March 29, 2023

\* At the November 8, 2022 general election, the
voters of Maryland ratified a constitutional
amendment changing the name of the Court of
Appeals of Maryland to the Supreme Court of
Maryland. The name change took effect on
December 14, 2022.

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

In this case, we consider whether judicial review of a no-probable-cause determination by the Maryland Commission on Civil Rights (the "Commission") begins and ends at the circuit court, or whether the losing party in the circuit court may appeal the adverse judgment to the Appellate Court of Maryland. That determination turns on whether there is a statute that expressly authorizes appellate review of the circuit court's ruling.

Jennifer Rowe filed a complaint with the Commission alleging that her gym, Krav Maga MD, LLC ("KMMD"), engaged in disability discrimination by deleting a comment she had posted on KMMD's Facebook account relating to her disability, and by subsequently terminating her membership. After investigating, the Commission found no probable cause to believe that KMMD had discriminated against Ms. Rowe based on her disability. Ms. Rowe submitted a request for reconsideration of the Commission's determination, which the Commission denied.

Ms. Rowe then sought review in the Circuit Court for Baltimore City, filing a petition for judicial review of the Commission's denial of her motion for reconsideration. The circuit court affirmed the Commission's no-probable-cause finding. Ms. Rowe then noted an appeal to the Appellate Court of Maryland (at the time, called the Court of Special Appeals of Maryland).[1] The Appellate Court held that it lacked jurisdiction to consider Ms. Rowe's appeal of the circuit court's ruling, concluding that no Maryland statute expressly

---

[1] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

grants the Appellate Court the authority to conduct such a review. For this reason, the Appellate Court dismissed Ms. Rowe's appeal. We affirm.

I

<b>Background</b>

**A. The Deletion of Ms. Rowe's Facebook Comment and Termination of Her Membership at KMMD**

Ms. Rowe had been a member of KMMD, a mixed-martial arts training gym, for approximately two years before the events at issue in this case took place. Ms. Rowe signed a membership agreement when she joined the gym, which included a provision that KMMD "reserves the right to revoke or deny the membership of any member or guest for cause if member fails to keep and obey any of such rules and regulations, or for reasons of nuisance, disturbance of other members, moral turpitude or fraud." The provision further stated: "In no event shall member's behavior, demeanor, hygiene or attitude be in any way offensive, threatening, unsanitary or in any manner contrary to the best interest of the membership as a whole."

In February 2019, Ms. Rowe commented on a post in KMMD's private Facebook group. The original post asked why some people have negative attitudes despite having full use of their extremities. Ms. Rowe – who suffers from anxiety, depression, and post-traumatic stress disorder – responded: "[b]ecause some of us have mental/emotional disabilities." KMMD staff determined that Ms. Rowe's comment violated the group's posting policies, and they deleted the comment. On a few occasions between February and

2

June 2019, Ms. Rowe and KMMD staff communicated regarding the deletion of her comment.

On June 17, 2019, Ms. Rowe expressed concern about a comment one of KMMD's instructors made about left-handed gym members. She emailed several complaints to KMMD staff about that issue between June 17 and 27, 2019. Then, on June 27, 2019, Ms. Rowe emailed that she still felt "hurt and angry" about the deleted Facebook comment. KMMD's General Manager, Elisabeth Green, responded that, if Ms. Rowe remained dissatisfied about the deletion, Ms. Rowe could cancel her membership. Ms. Green also told Ms. Rowe that "our communication on this matter will cease and moving forward, be entirely restricted to your ongoing weekly membership, classes, belt testing, and any feedback or questions you have regarding the physical facility."

Ms. Rowe subsequently sent two more emails to Ms. Green and the Chief Executive Officer of KMMD, Jeff Mount, on June 27, and she also called the gym twice. In her second email, Ms. Rowe told Mr. Mount and Ms. Green that "[a]t this point it seems impossible to resolve this dispute via email." She stated, "I am willing to meet in person," but "[i]f you are not able or willing to do that, then I will contact Krav Maga Worldwide. If they cannot help, then I will have no choice but to initiate an inquiry with the Maryland Commission on Civil Rights."

Later in the afternoon on June 27, Mr. Mount sent Ms. Rowe an email terminating her membership and banning her from the premises because, according to KMMD, she had violated her membership agreement by engaging in "disruptive, slanderous, [and] harassing" behavior.

**B. Statutory Framework**

Title 20 of the Maryland Code's State Government Article prohibits discriminatory acts in places of public accommodation. Md. Code, State Government Article ("SG") §§ 20-101(d)(1), 20-304 (2021 Repl. Vol.). That means an owner or operator of a place of public accommodation "may not refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, or privileges of the place of public accommodation because of the person's race, sex, age, color, creed, national origin, marital status, sexual orientation, gender identity, or disability." *Id.* § 20-304.

Under Subtitle 10 ("Enforcement"), a person claiming to be aggrieved by an alleged discriminatory act may file a complaint with the Commission. *Id.* § 20-1004(a). The Commission then investigates the complaint, and the Commission's staff issues written findings. *Id.* §§ 20-1005(a)(1), (a)(3). What happens next depends on whether or not the Commission finds probable cause to believe that a discriminatory act has been or is being committed.

1. Procedures Following a Finding of Probable Cause

If – unlike in Ms. Rowe's case – the Commission finds probable cause to believe that a discriminatory act has been or is being committed, the Commission's staff "immediately shall endeavor to eliminate the discrimination by conference, conciliation, or persuasion." *Id.* § 20-1005(b). If an agreement cannot be reached, the Commission's staff must make a written finding to that effect and provide copies of the written finding to the complainant and the respondent. *Id.* § 20-1005(c)(2). On the making of a finding under § 20-1005(c)(2) that an agreement cannot be reached, the complaint is certified to the

4

general counsel of the Commission, and written notice is issued and served in the name of the Commission, together with a copy of the complaint, requiring the respondent to answer the charges of the complaint at a public hearing before an administrative law judge. *Id.* § 20-1006.

The administrative law judge conducts the hearing in the county where the alleged discriminatory act occurred. *Id.* § 20-1008(a)(2). Testimony at the hearing is taken under oath and is recorded; a transcript is made of all such testimony. *Id.* § 20-1008(d). If, after reviewing all of the evidence, the administrative law judge finds that the respondent has engaged in a discriminatory act, the administrative law judge (1) issues a decision and order stating findings of fact and conclusions of law and (2) issues an order requiring the respondent to "cease and desist from engaging in the discriminatory acts … and … take affirmative action to effectuate the purposes of the applicable subtitle of this title." *Id.* § 20-1009(a). Various other remedies are also available if there is a finding that the respondent has engaged in a discriminatory act. *See id.* § 20-1009(b), (c).

If, after reviewing all of the evidence, the administrative law judge finds that the respondent has not engaged in an alleged discriminatory act, the administrative law judge states findings of fact and conclusions of law and issues an order dismissing the complaint. *Id.* § 20-1009(d).

Unless a timely appeal is filed with the Commission in accordance with the Commission's regulations, "a decision and order issued by the administrative law judge under this section shall become the final order of the Commission." *Id.* § 20-1009(e). The human relations statute is silent concerning judicial review of a final order issued under

5

§ 20-1009(e), but judicial review is available of such an order under the "contested cases" provisions of Maryland's Administrative Procedure Act ("APA"): SG § 10-222 (petition for judicial review filed in circuit court) and SG § 10-223 (appellate review in the Appellate Court of Maryland for a party aggrieved by circuit court decision issued under § 10-222). *See State Comm'n on Hum. Rels. v. Kaydon Ring & Seal, Inc.*, 149 Md. App. 666, 690 (2003).

2. Procedures Following a Finding of No Probable Cause

Cases like Ms. Rowe's proceed differently. If, after investigation of the initial complaint, the Commission finds no probable cause to believe that a discriminatory act has been or is being committed, the complainant may file a request that the Commission reconsider its determination. *Id.* § 20-1005(d)(1). If the Commission denies that request for reconsideration and if the federal Equal Employment Opportunity Commission does not have jurisdiction over the complaint's subject matter, then "a denial of a request for reconsideration of a finding of no probable cause by the Commission is a final order appealable to the circuit court as provided in § 10-222 of [the State Government Article]." *Id.* § 20-1005(d)(2).

**C. Ms. Rowe's Complaint**

On June 28, 2019, Ms. Rowe filed a complaint with the Commission alleging that KMMD engaged in disability discrimination by deleting her Facebook comment and by terminating her gym membership.[2] The Commission investigated the complaint, accepting

---

[2] Ms. Rowe's initial charge of discrimination also included an allegation of unlawful retaliation. The record reflects that Commission staff contacted Ms. Rowe on July 19, 2019,

evidence from Ms. Rowe and KMMD. On May 20, 2020, the Commission issued its written findings, explaining that "the investigation established that [KMMD] had a legitimate, non-discriminatory business reason, not based on [Ms. Rowe's] disability, for terminating her membership because she failed to conform to the usual and regular requirements, standards, and regulations of [KMMD's] establishment." (Cleaned up). Thus, the Commission concluded that there was not probable cause to believe KMMD had discriminated against Ms. Rowe based on her disability.

On May 29, 2020, Ms. Rowe filed a request for reconsideration of the no-probable-cause finding, which the Commission denied on July 15, 2020. On August 14, 2020, Ms. Rowe filed a petition for judicial review in the Circuit Court for Baltimore City of the Commission's denial of her request for reconsideration. The circuit court issued an order affirming the Commission's decision on February 8, 2021.

Ms. Rowe then noted an appeal to the Appellate Court. Ms. Rowe raised issues in her briefing to the Appellate Court concerning the administrative process and the evidentiary basis for the Commission's findings. The Commission filed a response brief addressing the merits of Ms. Rowe's claims. During oral argument on February 2, 2022, the Appellate Court panel raised *sua sponte* the issue of its jurisdiction – specifically, whether there exists a statute authorizing an appeal to the Appellate Court from the judgment of the circuit court on a petition for judicial review of a no-probable-cause finding by the Commission. After receiving supplemental briefing from the parties on the

to "revise charge to remove Retaliation," and that she revised her complaint to delete the retaliation claim on July 25, 2019.

7

jurisdictional issue, the Appellate Court dismissed the appeal for lack of jurisdiction in an unreported opinion. *In the Matter of Rowe*, No. 0354, Sept. Term, 2021, 2022 WL 1224729 (April 25, 2022). The Appellate Court concluded that SG § 20-1005(d)(2) does not authorize an appeal to the Appellate Court of a circuit court's ruling concerning a no-probable-cause finding by the Commission. *Id.*, 2022 WL 1224729, at *6-*9.

Ms. Rowe petitioned this Court for a writ of *certiorari*, which we granted on August 25, 2022. *Rowe v. MCCR*, 481 Md. 1 (2022). Ms. Rowe presents the following question for our review, which we have rephrased slightly:

> Does the Appellate Court of Maryland have jurisdiction over appeals from circuit courts of petitions for judicial review of Maryland Commission on Civil Rights no-probable-cause findings in public accommodations discrimination cases?

## II

## Standard of Review

Whether the Appellate Court has subject matter jurisdiction over Ms. Rowe's appeal is a question of law that we review *de novo. See Mayor & City Council of Balt. v. ProVen Mgmt., Inc.*, 472 Md. 642, 664 (2021).

## III

## Discussion

Ms. Rowe argues that the General Assembly expressly has granted the right to Appellate Court review of an adverse circuit court ruling concerning a Commission no-probable-cause finding. Her argument proceeds as follows: SG § 20-1005(d)(2) grants the right to judicial review by the circuit court of no-probable-cause determinations through

8

express incorporation of the circuit court judicial review provision contained in the APA, SG § 10-222, the same section that provides judicial review in contested cases in circuit courts. The next section of the APA, SG § 10-223, provides that "[a] party who is aggrieved by a final judgment of a circuit court under this subtitle may appeal to the [Appellate Court of Maryland] in the manner the law provides for the appeal of civil cases." SG § 10-223(b)(1). Ms. Rowe contends that, as a result of the reference to SG § 10-222 in SG § 20-1005(d)(2), the losing party in the circuit court on a petition for judicial review filed under SG § 20-1005(d)(2) is aggrieved by a final judgment of a circuit court "under this subtitle" – the APA's contested cases subtitle – and therefore is entitled to the same right to review in the Appellate Court that the losing party in an APA contested case has under SG § 10-223.

The Commission argues that the plain language of SG § 20-1005(d)(2) does not include an express grant of the right to appeal an adverse ruling in the circuit court. Rather, the Commission contends, SG § 20-1005(d)(2) only expressly provides a right to judicial review in the circuit court. The Commission asserts that, by referring only to § 10-222 in § 20-1005(d)(2) – and not also to § 10-223 or to the APA as a whole – the General Assembly intentionally limited judicial review with respect to Commission no-probable-cause findings to the circuit court.

Resolution of the parties' competing contentions requires us to interpret SG § 20-1005(d)(2). As we have stated previously,

> [t]he goal of statutory interpretation is to "ascertain and effectuate the actual intent of the General Assembly in enacting the law under consideration." *Matter of Collins*, 468 Md. 672, 689 (2020). In conducting this inquiry, "we

9

begin with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (internal quotation marks and citations omitted). If the statutory language is "unambiguous and clearly consistent with the statute's apparent purpose, [the] inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction." *Lockshin v. Semsker*, 412 Md. 257, 275 (2010). We "neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit or extend its application." *Id.* (internal quotation marks and citations omitted). Rather, we construe the statute "as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Mayor & Town Council of Oakland v. Mayor & Town Council of Mountain Lake Park*, 392 Md. 301, 316 (2006).

We do not "read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone." *Lockshin*, 412 Md. at 275. "Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *Id.* at 276. We presume "that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Id.* To the extent there is ambiguity in statutory language, we strive to resolve it by "searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." *Id.* We also often review legislative history to determine whether it confirms the interpretation suggested by our analysis of the statutory language. *See, e.g.*, *In re O.P.*, 470 Md. 225, 255 (2020). Further, we "check our interpretation against the consequences of alternative readings of the text," *Bell v. Chance*, 460 Md. 28, 53 (2018), which "grounds the analysis." *In re O.P.*, 470 Md. at 255. Doing so helps us "avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense," *Mayor & Town Council of Oakland*, 392 Md. at 316; *see also Bell*, 460 Md. at 53 (explaining that, throughout the statutory interpretation process, "we avoid constructions that are illogical or nonsensical, or that render a statute meaningless").

*Pabst Brewing Co. v. Frederick P. Winner, Ltd.*, 478 Md. 61, 75-76 (2022).

## A. The Statutes Governing Appellate Review From Judgments of the Circuit Court Generally

"It is an often stated principle of Maryland law that appellate jurisdiction, except as constitutionally authorized, is determined entirely by statute, and that, therefore, a right of appeal must be legislatively granted." *Gisriel v. Ocean City Bd. of Supervisors of Elections*, 345 Md. 477, 485 (1997) (citing *Maryland-Nat'l Cap. Park & Plan. Comm'n v. Smith*, 333 Md. 3, 6 (1993) ("The right to take an appeal is entirely statutory, and no person or agency may prosecute an appeal unless the right is given by statute.")). A general right to appeal from a judgment of the circuit court exists under § 12-301 of the Courts and Judicial Proceedings Article:

> Except as provided in § 12-302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law.

Md. Code, Cts. & Jud. Proc. (CJP) § 12-301 (2020 Repl. Vol.). The next section limits this broad appeal right in some cases:

> Unless a right to appeal is expressly granted by law, § 12-301 of this subtitle does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of … an administrative agency[.]

*Id.* § 12-302(a); *see Gisriel*, 345 Md. at 486.[3]

A complaint seeking statutory judicial review of an administrative agency decision is not technically an invocation of "appellate jurisdiction" but rather is an original action

---

[3] This Court described the history of this exception, from its origin in 1785 to relatively modern times, in *Gisriel*, 345 Md. at 487-90.

for judicial review. Thus, CJP § 12-302(a) uses the phrase "appellate jurisdiction" in a nontechnical sense. *Kant v. Montgomery County*, 365 Md. 269, 274 (2001) ("Although § 12-302(a) refers to a circuit court exercising 'appellate jurisdiction' in reviewing the decision of an administrative agency or local legislative body, the word 'appellate' is a misnomer in this context. As we have often pointed out, a circuit court action reviewing the adjudicatory decision of an administrative agency or local legislative body is not an 'appeal.'"). This Court has held that § 12-302(a) removes circuit court judgments reviewing administrative agency decisions from CJP § 12-301's general right of appeal. *See id.* at 274-75; *Prince George's County v. Beretta U.S.A. Corp.*, 358 Md. 166, 176-77 (2000); *Gisriel*, 345 Md. at 496. "[A]ny right of appeal in such a case must be found in some other statute." *Murrell v. Mayor & City Council of Balt.*, 376 Md. 170, 185 (2003).

Ms. Rowe appealed from a final judgment of the Circuit Court for Baltimore City, which exercised "appellate jurisdiction" (within the meaning of CJP § 12-302(a)) to affirm the Commission's denial of Ms. Rowe's motion for reconsideration. In order for the intermediate appellate court to have jurisdiction over Ms. Rowe's appeal, CJP § 12-302(a) requires an expressly granted right to appeal rooted in a statutory authorization other than CJP § 12-301.

## B. The Proposed Other Statutory Authorization

Ms. Rowe contends that SG § 20-1005(d)(2) provides that express authorization. That subsection states that (unless the Equal Employment Opportunity Commission has jurisdiction over the complaint) the Commission's denial of reconsideration of its no-

probable-cause finding is "a final order appealable to the circuit court as provided in [SG] § 10-222."

The APA is found in the State Government Article, Title 10, Subtitles 1, 2, and 3 of the Maryland Code. Section 10-222 concerns circuit court review under Subtitle 2, the APA's "Contested Cases" subtitle. A "contested case," as relevant here, is a "proceeding before an agency to determine … a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for an agency hearing[.]" SG § 10-202(d)(1)(i).

Section 10-222 provides a right of judicial review in the circuit court to "a party who is aggrieved by the final decision in a contested case[.]" *Id.* § 10-222(a)(1). A petition for judicial review must be filed with the circuit court for the county in which "any party resides or has a principal place of business." *Id.* § 10-222(c). The section goes on to outline the procedures for judicial review of an agency action in a contested case, including rules governing intervention by other interested persons and the taking of additional evidence before the agency. *See id.* § 10-222(d), (f). The statute directs the circuit court to "conduct a proceeding under this section without a jury," *id.* § 10-222(g)(1), following which the court may:

 (1) remand the case for further proceedings;

 (2) affirm the final decision; or

 (3) reverse or modify the decision if any substantial right of the petitioner
  may have been prejudiced because a finding, conclusion, or decision:

   (i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted;

(vi) in a case involving termination of employment or employee discipline, fails to reasonably state the basis for the termination or the nature and extent of the penalty or sanction imposed by the agency; or

(vii) is arbitrary or capricious.

*Id.* § 10-222(h).

A discrimination complaint prior to a finding of probable cause is not a "contested case" under the APA. *See Parlato v. State Comm'n on Hum. Rels.*, 76 Md. App. 695, 701-03 (1988) (holding that a charge of employment discrimination within the jurisdiction of the EEOC, and therefore not subject to judicial review under the predecessor to SG § 20-1005(d)(2)), is not a "contested case," and thus judicial review is also unavailable under the APA). This is so because a complainant is not entitled to, and does not receive, a quasi-judicial hearing prior to the Commission making its determination regarding probable cause. The Commission's work is investigative, not quasi-judicial, at this stage of the process. *Id.* at 703; *cf. Wash. Suburban Sanitary Comm'n vs. Lafarge N. Am., Inc.*, 443 Md. 265, 274-78 (2015) (refund claims brought under § 25-106 of the Public Utility Article are contested cases under the APA, because the agency is required to hold a hearing to determine whether the claimant is entitled to a refund and, if so, in what amount).

SG § 20-1005(d)(2)'s reference to SG § 10-222 means that the circuit court must conduct its review of the Commission's no-probable-cause determination, to the extent applicable, as it conducts its review in a contested case under § 10-222. Some of § 10-222's

14

provisions can, and therefore do, have application to judicial review of Commission no-probable-cause determinations. Thus, a complainant who seeks judicial review of a no-probable-cause determination must file their petition with the circuit court for the county in which "any party resides or has a principal place of business," SG § 10-222(c), and "[t]he court may permit any other interested persons to intervene[.]" *Id.* § 10-222(d)(1). The circuit court, in its decision, may affirm the Commission's determination or "reverse or modify" it "if any substantial right of the petitioner may have been prejudiced" because a finding, conclusion, or decision of the Commission is (among other things) arbitrary or capricious. *Id.* § 10-222(h)(2), (h)(3).

However, other portions of § 10-222 have no application to judicial review of no-probable-cause determinations because no quasi-judicial hearing has occurred at the Commission. For example, § 10-222(f)(2) provides that the circuit court "may order the presiding officer to take additional evidence" under certain circumstances. That subsection has no application to judicial review of a no-probable-cause finding, because no "evidence" has previously been taken.

While SG § 20-1005(d)(2) effectively incorporates SG § 10-222's procedures (to the extent applicable) into the judicial review process for Commission no-probable-cause findings, § 20-1005(d)(2) is silent concerning an appeal from the circuit court to the intermediate appellate court. The parties' core disagreement is whether, despite SG § 20-1005(d)(2)'s silence concerning review beyond the circuit court, the Appellate Court has jurisdiction to review a circuit court's ruling concerning a Commission no-probable-cause finding under SG § 10-223.

15

Section 10-223 concerns appeals from the circuit court to the intermediate appellate court under the APA's contested cases subtitle, reading in relevant part: "A party who is aggrieved by a final judgment of a circuit court *under this subtitle* may appeal to the [Appellate Court of Maryland] in the manner that law provides for appeal of civil cases." (Emphasis added). Section 10-222 is part of "this subtitle," as referenced in § 10-223. The question thus becomes: Is a circuit court's ruling on a petition for judicial review of a Commission no-probable-cause finding under § 20-1005(d)(2) (part of Subtitle 20 of the State Government Article) "a final judgment of a circuit court under this subtitle," *i.e.*, Subtitle 2? To answer this question, we look first to the plain language of § 20-1005(d)(2).

1. The Plain Language of SG § 20-1005(d)(2)

Section 20-1005(d)(2) is unambiguous. It expressly provides for judicial review in "the circuit court," not the Appellate Court. It expressly references SG § 10-222 – the APA provision regarding judicial review of agency decisions in circuit courts – and nothing else. Thus, the plain language of the statute indicates that the General Assembly intended to confine judicial review of no-probable-cause determinations to the circuit court.

Nevertheless, Ms. Rowe argues that the text of SG § 20-1005(d)(2) indicates that no-probable-cause findings should be treated in every regard as though they were APA contested cases. Specifically, she contends:

> Since an appeal of a no-probable-cause determination to the circuit court pursuant to SG § 20-1005(d) occurs via SG § 10-222, it follows that any decision rendered by a circuit court via that procedure occurs under the APA—Contested Cases subtitle. A party who loses her appeal before the circuit court pursuant to SG § 20-1005(d)(2)'s invocation of SG § 10-222 is therefore a party "aggrieved by a final judgment of a circuit court under this

16

subtitle," the APA—Contested Cases [subtitle], for purposes of SG § 10-223 appellate review.

Similarly, Ms. Rowe characterizes § 20-1005(d)(2)'s reference to § 10-222 elsewhere in her briefing as "provid[ing] for circuit court review of no-probable-cause determinations under SG § 10-222."

Ms. Rowe overstates the connection between SG § 20-1005(d)(2) and the APA. The reference to § 10-222 in § 20-1005(d)(2) does not transform Ms. Rowe's claim into a petition for judicial review "via" or "under" the APA. As discussed above, the Commission's investigation of Ms. Rowe's discrimination complaint was not a contested case. *See Parlato*, 76 Md. App. at 701. Although Ms. Rowe's circuit court case followed SG § 10-222's procedures to the extent they apply to a review of a Commission no-probable-cause finding, her case never became a contested case brought under the APA; rather, it retained its essence as a petition for judicial review arising under § 20-1005(d)(2). The reference in § 20-1005(d)(2) to § 10-222 does not transform an initial investigation and no-probable-cause finding into an APA contested case as to which every provision of the entire APA – including SG § 10-223 – applies. Jurisdiction arises under the human relations statute, not under the APA or somehow under both.

Elsewhere in the Human Relations title – and throughout the Code[4] – the General Assembly has referenced not one specific section, but rather the entire APA contested cases

---

[4] *See, e.g.*, Md. Code, Crim. Law § 4-107(i) (2021 Repl. Vol.) (providing that a person aggrieved by a decision of the Secretary of Public Safety with respect to a permit to purchase, possess, and use bulletproof body armor "may seek review of the decision under Title 10, Subtitle 2 of the State Government Article"); Md. Code, Trans. § 5-201(c) (2020 Repl. Vol.) ("Any person aggrieved by an order of the Administration or by the

subtitle or the APA as a whole, when it has sought to apply all of the APA's judicial review provisions (including review in the Appellate Court) to a particular agency proceeding. One example just a few sections away from § 20-1005(d)(2) stands out: The housing discrimination part of the Human Relations title's enforcement subtitle specifies that "any party aggrieved by a final order for relief under § 20-1029 of this subtitle may obtain judicial review of the order *in accordance with the provisions for judicial review under Title 10, Subtitle 2 of this article*." SG § 20-1030(a) (emphasis added). This language expressly refers to the entire APA contested cases subtitle, rendering applicable both § 10-222 and § 10-223 and thereby providing for Appellate Court review of circuit court rulings on petitions for judicial review of final administrative orders in housing

---

grant, denial, suspension, or revocation of any license, certificate, or other approval may appeal as provided by the Administrative Procedure Act."); *see also id.* § 12-209(b); Md. Code, State Fin. & Proc. (SFP) § 15-223 (2021 Repl. Vol.) (providing that a decision of the Maryland State Board of Contract Appeals "is subject to judicial review in accordance with Title 10, Subtitle 2 of the State Government Article"). We discuss SFP § 15-223 further in footnote 8 below.

18

discrimination cases.[5] Other statutes expressly refer to SG § 10-223[6] or to the intermediate appellate court[7] itself in establishing the extent of review of agency action.

These provisions in the Human Relations title and throughout the Code show that the General Assembly knows how to expressly provide for Appellate Court review of a circuit court's decision on a petition for judicial review when it wants to do so. The General Assembly has used varying language to effect these express grants of appellate review.

---

[5] The Dissent notes that the General Assembly enacted § 20-1030(a) in 1991, several years after it amended § 20-1005(d)(2) to provide judicial review of no-probable-cause findings. It is telling that, in choosing language to provide Appellate Court review of housing discrimination cases, the General Assembly did not import § 20-1005(d)(2)'s language referencing § 10-222 into its new neighbor, § 20-1030(a), but instead referenced Subtitle 2 of the APA in its entirety in § 20-1030(a).

[6] *See, e.g.,* Md. Code, Tax-Prop. § 8-215(e) (2019 Repl. Vol.) ("A country club or golf course may appeal any action taken under this section as provided by §§ 10-222 and 10-223 of the State Government Article."); Md. Code, Crim. Proc. § 11-815(c) (2018 Repl. Vol.) ("Within 30 days after the final decision of the Executive Director [of the Criminal Injuries Compensation Board], a claimant aggrieved by that decision may appeal the decision under §§ 10-222 and 10-223 of the State Government Article."); Md. Code, Env't § 4-412(b) (2014 Repl. Vol.) ("A person aggrieved by an order or permit issued may obtain immediate judicial review under the provisions of §§ 10-222 and 10-223 of the State Government Article and the Maryland Rules."); *see also* Md. Code, Bus. Reg. § 4-312 (2015 Repl. Vol.); Md. Code, Health-Gen. § 7-407 (2019 Repl. Vol.); Md. Code, Health Occ. § 21-314 (2021 Repl. Vol.); Md. Code, Lab. & Empl. (LE) § 3-906(j) (2016 Repl. Vol.); Md. Code, Nat. Res. § 5-608(c)(3) (2018 Repl. Vol.); Md. Code, Pub. Safety (PS) § 3-212(c) (2018 Repl. Vol.); Md. Code, Tax-Gen. § 13-532(a) (2016 Repl. Vol.); Md. Code, Bus. Occ. & Prof. § 2-210 (2018 Repl. Vol.).

[7] *See, e.g.*, Md. Code, Corr. Servs. § 10-911(b) (2017 Repl. Vol.) ("A party aggrieved by a decision of a court under this subtitle may appeal to the [Appellate Court of Maryland]," after having provided in § 10-911(a) for initial judicial review in the circuit court); PS § 5-110 ("The Secretary or the applicant may appeal the decision of the circuit court to the Court of Special Appeals."); *see also* LE § 4-602; Md. Code, Fin. Inst. (FI) § 11-218(d) (2020 Repl. Vol.); Md. Code, Land Use § 9-1005(c) (2012 Repl. Vol.); FI § 11-416(e).

19

However, the distinctions in language from one statute to another are immaterial; they all contain express language demonstrating that the General Assembly intends for review of the particular kind of agency decision to continue beyond the circuit court to the Appellate Court.

Section 20-1005(d)(2) is different. Unlike all of these other statutes, § 20-1005(d)(2) only references the APA's contested cases circuit court procedures.[8] Ms. Rowe chalks this

---

[8] The judicial review provision pertaining to whistleblower claims contains language similar to § 20-1005(d)(2) in that it authorizes review "in accordance with § 10-222 of the State Government Article." Md. Code, State Pers. & Pens. (SPP) § 5-310(e) (2015 Repl. Vol.). However, SPP § 5-310(e) is distinguishable from SG § 20-1005(d)(2) in an important respect.

Prior to 1996, the predecessor to SPP § 5-310(e) provided that "[a] complainant or appointing authority may appeal the decision issued under subsection (e) of this section *in accordance with §§ 10-215 and 10-216 of the State Government Article*." SPP § 3-308(g)(1) (1994 Repl. Vol.) (emphasis added). Sections 10-215 and 10-216 were the predecessors of § 10-222 and § 10-223, respectively. Thus, prior to 1996, the predecessor to SPP § 5-310(e) expressly referenced both the APA's circuit court and Appellate Court judicial review sections. In 1996, as part of the reorganization of the State Personnel and Pensions Article, the General Assembly moved the whistleblower judicial review provision from § 3-308(g)(1) to new § 5-310(e). In the new version of the provision, the General Assembly referenced only § 10-222 of the State Government Article. In doing so, the General Assembly gave no indication that it had purposefully eliminated Appellate Court review of circuit court decisions in whistleblower cases. This absence is notable because an earlier Revisor's Note pointed out that SPP § 3-308(g)(1)'s "former reference to the 'judicial review standards of the Administrative Procedure Act' is deleted as unnecessary in light of the specific reference to the governing provisions – i.e., §§ 10-215 and 10-216 of the State Government Article." SPP § 3-308, Rev. Note (1994). Given the General Assembly's explicit prior recognition of both circuit court and appellate review of administrative decisions in whistleblower cases, it would be strange to whittle down such review without comment while reorganizing the State Personnel and Pensions Article.

The Appellate Court considered an analogous situation in *Department of General Services v. Harmans Associates Limited Partnership*, 98 Md. App. 535 (1993). In *Harmans*, after the Board of Contract Appeals ruled in favor of the contractor, the Department of General Services sought judicial review of the Board's decision under SFP

20

up to "inartful drafting" and contends that the absence of an express reference to § 10-223

is not enough to justify the inference that § 20-1005(d)(2)'s references to the circuit court

and to § 10-222 mean that only the circuit court has jurisdiction to review a Commission

§ 15-223. 98 Md. App. at 541, 544. The circuit court entered a judgment in favor of the contractor, and DGS appealed to the Appellate Court. *Id.* at 541. The contractor filed a motion to dismiss the appeal due to lack of jurisdiction, based on the fact that (at that time) SFP § 15-223 only referenced a right to judicial review "in accordance with § 10-215 of the State Government article," the predecessor to current SG § 10-222. The predecessor to SFP § 15-223 (SFP § 11-139) had referred to judicial review in accordance with the provisions of "title 10, subtitle 2 of the State Government article (Administrative Procedure Act—Contested Cases)." As part of the Code Revision process, SFP § 11-139 was recodified as SFP § 15-223. At that time, the reference to "title 10, subtitle 2" of the APA changed to a specific reference to SG § 10-215. However, the Revisor's Note for that bill stated that "[t]his section is new language derived without substantive change from former SF §§ 11-137(e) and 11-139." *Harmans*, 98 Md. App. at 545. The Appellate Court stated that it "would regard an abrogation of the right of appeal from the decision of the circuit court to be a substantive change in the law, and thus presume from the Revisor's Note that the Legislature did not intend such a result." *Id.* at 545-46. The Appellate Court denied the contractor's motion to dismiss, concluding that the reference only to SG § 10-215 in SFP § 15-223 was a "Code Revision error." *Id.* at 543. Notably, the Appellate Court did not perceive a right to appeal to the Appellate Court based on the language of SG § 10-216 (the predecessor to current § 10-223).

Following the Appellate Court's decision in *Harmans*, the General Assembly did not indicate that it believed the reference in SFP § 15-223 to SG § 10-215 by itself triggered jurisdiction under SG § 10-216, thus making it unnecessary to amend SFP § 15-223 to confirm the Appellate Court's jurisdiction. Rather, the General Assembly passed a corrective bill reinstating the prior, broader language of former SFP § 11-139 ("A decision of the Appeals Board is subject to judicial review in accordance with Title 10, Subtitle 2 of the State Government Article."). *See* 1994 Md. Laws ch. 3 at 151.

It appears that, when the General Assembly moved the provision formerly contained in SPP § 3-308(g)(1) to new § 5-310(e), it may have made an error similar to the one the Appellate Court discussed in *Harmans*. What previously had been a reference to the predecessors of both §§ 10-222 and 10-223 became a reference only to § 10-222. Here, in contrast to SPP § 5-310(e), SG § 20-1005(d)(2) since its enactment in 1982 has always referred only to SG § 10-222 (or its predecessor). That cannot be attributed to a Code Revision error.

21

no-probable-cause finding. She cites legislative history (*see* § III.B.2 below) indicating that the General Assembly intended to create the opportunity for judicial review of no-probable-cause findings. The General Assembly did precisely that, but it created one level of judicial review rather than two. In this regard, § 20-1005(d)(2) resembles enactments of local legislative bodies that have authorized circuit court judicial review of administrative decisions without granting a right to further review to the Appellate Court. *See, e.g.*, *Beretta U.S.A. Corp.*, 358 Md. at 169, 174; *Dvorak v. Anne Arundel Cnty. Ethics Comm'n*, 400 Md. 446, 458-59 (2007). In such cases, legislative bodies have concluded that one level of judicial review of an administrative decision is sufficient. The plain language of SG § 20-1005(d)(2) reflects that the General Assembly came to the same conclusion regarding judicial review of Commission no-probable-cause determinations.

Notably, there is no specific grant in the State Government Article, Subtitle 20, of judicial review of final orders of the Commission issued under SG § 20-1009 after an administrative law judge has conducted an administrative hearing under SG § 20-1008. A specific grant of judicial review of such a final order is unnecessary because the administrative hearing required under § 20-1008 is inherently a contested case for purposes of the APA. Thus, judicial review of that kind of final order arises directly under the APA. *See State Comm'n on Hum. Rels. v. Kaydon Ring & Seal, Inc.*, 149 Md. App. 666, 690 (2003). Unlike a § 20-1009 order issued after an administrative hearing, the General Assembly understood that it had to provide an express grant of judicial review of the kind of final order at issue in this case because the investigative phase of a discrimination complaint is not a contested case. If the General Assembly had wanted the judicial review

22

it was creating for no-probable-cause findings to be equivalent to the multi-level judicial review already afforded for final agency orders issued under § 20-1009, the General Assembly could have referenced § 20-1009 in § 20-1005(d)(2), perhaps providing that "a denial of a request for reconsideration of a finding of no probable cause by the Commission is a final order subject to judicial review equivalent to the review of a final order issued under § 20-1009 of this subtitle." Against the backdrop of the multi-level judicial review applicable to § 20-1009 final orders after administrative hearings on discrimination complaints, the General Assembly's decision in § 20-1005(d)(2) to reference only the APA provisions applicable to circuit court review is significant.

In sum, the statutory language is unambiguous: "appealable to the circuit court as provided in [SG] § 10-222" means precisely what it says. It does not mean "appealable to the circuit court as provided in § 10-222 as well as the intermediate appellate court as provided in § 10-223 and any other provisions of the contested cases subtitle of the Administrative Procedure Act." [9] At most, § 20-1005(d)(2)'s reference to § 10-222, read in conjunction with § 10-223, arguably can be read to *impliedly* contemplate further review

---

[9] The Dissent notes that SG § 10-222 refers to "a final decision in a contested case," whereas § 10-223(b)(1) refers to "a final judgment of a circuit court under this subtitle." Dissent Slip Op. at 7-8. Based on this, the Dissent suggests that § 10-222 only applies to contested cases, while § 10-223 applies to more than contested cases. *See* Dissent Slip Op. at 7-8. But "this subtitle" in § 10-223 means Subtitle 2 of the APA: the Contested Cases subtitle. Thus, § 10-223 does not, by its own terms, authorize an appeal to the Appellate Court of a circuit court judgment in something other than a contested case. In order for § 10-223 to apply to such a judgment, another statute must expressly render the provisions of § 10-223 applicable to that judgment. The Maryland Code is replete with statutes that do just that. *See* footnotes 4, 6, and 7 above. Sections 20-1005(d)(2) and 10-222 are not among them.

23

in the Appellate Court. But an implied right of appeal is not enough. Section 20-1005(d)(2) does not expressly authorize further review in the Appellate Court. Nor does SG § 10-223 expressly authorize such review. The circuit court's judgment on a petition for judicial review of a Commission no-probable-cause determination is not a final judgment under § 10-222. Rather, it is a final judgment issued under § 20-1005(d)(2).

2. Legislative History

Although SG § 20-1005(d)(2)'s plain language is unambiguous and our analysis need not proceed any further, a review of the pertinent legislative history of the statute does not convince us that the General Assembly intended to provide two levels of judicial review of Commission no-probable-cause findings.

Before recodification in SG § 20-1005(a)-(c), the former Article 49B § 10(a)-(c) set out the Commission's duties regarding the investigation of complaints and conciliation after probable cause findings, and it contained no grant of judicial review. That changed in 1982. In the employment discrimination case *Vavasori v. Maryland Commission on Human Relations*, Mr. Vavasori appealed a no-probable-cause finding to the Baltimore City Court.[10] Docket No. 24P, No. 9-103866 (Balt. City Court Jan. 13, 1982). The employer-respondent challenged the City Court's jurisdiction, arguing that the administrative appeal was not a contested case and therefore did not qualify for APA judicial review; the City Court agreed and dismissed the appeal on January 13, 1982. *See*

---

[10] "The Baltimore City Court was consolidated with the other courts of the Supreme Bench of Baltimore City into the newly created Circuit Court for Baltimore City on January 1, 1983." *Vavasori v. Comm'n on Hum. Rels.*, 65 Md. App. 237, 240 n.1 (1985) (citing Chapter 523 of the Acts of 1980, ratified Nov. 4, 1980).

*Vavasori v. Vulcan-Hart Corp.*, No. 209, slip op. at 1 (Md. Ct. Spec. App. Dec. 27, 1982) (summarizing the January 1982 circuit court proceedings) (together with the City Court dismissal, "*Vavasori I*").

The General Assembly reacted swiftly. On January 22, 1982, Senator Edward Conroy introduced Senate Bill 419 to amend Article 49B, § 10 by adding subsection (d), and it was enacted that April as Ch. 129, Acts of 1982. According to the preamble to that law, its passage was "for the purpose of creating a right of appeal from a no probable cause finding by the Human Relations Commission under certain circumstances." The Revised Fiscal Note states that the amendment to the human relations statute "provides that a denial by the State's Human Relations Commission of a request for reconsideration of a Commission finding of 'no probable cause' in discrimination cases is to be considered a final order, appealable to the circuit courts under the judicial review provisions of the State's Administration [sic] Procedure Act[.]" SB 419, Revised Fiscal Note, at 1 (Md. Laws 1982). The bill file contains both the January 1982 City Court ruling and the December 1981 brief prepared by the *Vavasori* employer-respondent arguing that the administrative appeal should be dismissed. *See* S.B. 419, Session No. 388 at 56-61 (Md. Laws 1982). The General Assembly passed the bill in April of 1982, and the new provision appears post-recodification as SG § 20-1005(d).

Following the January 1982 dismissal of the circuit court action for judicial review, Mr. Vavasori filed a notice of appeal. By the time the intermediate appellate court issued an opinion 10 months later, S.B. 419 had taken effect to authorize circuit courts to review no-probable-cause findings. The Appellate Court applied the amendment retroactively and

25

remanded Mr. Vavasori's case to the lower court for a decision on the merits. *See Vavasori I*, slip op. at 4. In January 1985, the circuit court affirmed the Commission's no-probable-cause finding. In November 1985, the Appellate Court affirmed. *Vavasori v. Comm'n on Hum. Rels.*, 65 Md. App. 237, 253 (1985) (*Vavasori II*).

### a. The Significance of <u>Vavasori I</u> and <u>II</u>

Ms. Rowe asserts that the *Vavasori* decisions are relevant to a proper understanding of the legislative history of § 20-1005(d)(2) for two reasons. First, Ms. Rowe argues that the *Vavasori I* materials' presence in the bill file shows that the General Assembly intended for S.B. 419 to respond to the outcome in *Vavasori* and provide judicial review for no-probable-cause findings like Mr. Vavasori's. She is right; S.B. 419 did solve the *Vavasori* problem, providing for judicial review in the circuit court of certain Commission no-probable-cause findings. However, S.B. 419 expressly limited judicial review of such findings by ruling out review in the entire class of cases over which the EEOC has concurrent jurisdiction. Ms. Rowe does not explain how it follows from the General Assembly's decision to create a limited right of judicial review of no-probable-cause findings in the circuit court that the General Assembly necessarily intended there would be a second level of review for the subset of cases over which the EEOC lacks jurisdiction.[11]

---

[11] We are not persuaded by Ms. Rowe's contention that, because the Commission is the sole administrative decisionmaker with respect to claims of public accommodations discrimination (unlike claims over which the EEOC has concurrent jurisdiction), the General Assembly must have intended to provide two levels of judicial review. *See* section III.B.3 below.

Second, Ms. Rowe argues that the very existence of the November 1985 Appellate Court opinion in *Vavasori II* is evidence of the General Assembly's intent to make judicial review available in the intermediate appellate court, because that court itself exercised jurisdiction over the case and affirmed the circuit court's January 1985 post-remand opinion. Ms. Rowe is correct that the *Vavasori II* Court addressed Mr. Vavasori's contentions on the merits:

> After a review of the facts heretofore discussed, we find evidence to support the Commission's conclusion that there was no probable cause to believe that the appellant was the victim of discrimination. We agree with the court below that the evidence supporting the Commission's finding is substantial.

65 Md. App. at 251-52. Because *Vavasori II* acknowledged the jurisdictional issue that originally had resulted in the dismissal of the case in the lower court, Ms. Rowe argues that the Appellate Court's treatment of the merits following the addition of the language now contained in § 20-1005(d)(2) underscores the Appellate Court's understanding that the General Assembly intended to confer a second level of judicial review. The Commission, meanwhile, argues that the only two issues before the Appellate Court in *Vavasori II* were a due process claim and whether the no-probable-cause finding was supported by substantial evidence, not whether the Appellate Court had jurisdiction over the appeal from the circuit court.

The Commission is correct that the *Vavasori II* opinion contains no discussion of the Appellate Court's jurisdiction. In any event, neither the apparent acquiescence of the parties to the exercise of appellate jurisdiction nor the intermediate appellate court's exercise of jurisdiction in *Vavasori II* is relevant to our determination of whether there

27

actually is an express statutory grant of appellate jurisdiction. *See Miller and Smith at Quercus, LLC v. Casey PMN, LLC*, 412 Md. 230, 240-41 (2010) (discussing this Court's obligation to dismiss a case *sua sponte* after finding it lacks jurisdiction, even where the parties agree jurisdiction should exist or the Appellate Court has entertained an appeal without jurisdiction). There is no doubt that this Court must affirm the Appellate Court's dismissal of this case if we conclude that the Appellate Court lacked jurisdiction to hear it, even if *Vavasori II* stands as an example of an earlier panel of the Appellate Court exercising jurisdiction over the substance of a similar case. In that sense, the *Vavasori II* Court's understanding of its jurisdiction is of little concern to us for its own sake, and instead the only relevant question is whether the fact that the *Vavasori II* Court reached the merits of Mr. Vavasori's claims reveals enough about the General Assembly's understanding of SG § 20-1005(d)(2) to sway our reading of the statute's plain text. We are not so swayed. It is the job of courts to ascertain legislative intent; court rulings generally do not shed light on legislative intent. Thus, *Vavasori II* strikes us as an erroneous exercise of jurisdiction, rather than as a clear indicator that the General Assembly intended two levels of judicial review despite the language of the statute.[12]

---

[12] The fact that the Commission did not raise a challenge concerning the Appellate Court's jurisdiction in its briefing before the Appellate Court in this case also is immaterial to our analysis. Relatedly, we respectfully disagree with the Dissent's characterization of the time that has elapsed since *Vavasori II* as a period of legislative "inaction." *See* Dissent Slip Op. at 11. Neither Ms. Rowe nor the Dissenting Opinion cites a reported appellate court opinion between *Vavasori II* and the Appellate Court's opinion in this case in which the court has considered the merits of an appeal challenging a circuit court's ruling on judicial review of a Commission no-probable-cause determination. Nor have we found such a reported opinion. Given that the question of the Appellate Court's jurisdiction was not at issue in *Vavasori II* and that there has not been a subsequent reported opinion of the

### b. The Fiscal Note and Other Legislative Materials

Ms. Rowe points to several other items in the bill file that she contends reveal the General Assembly's intent. First, the Revised Fiscal Note summarized S.B. 419's effect as causing a no-probable-cause finding to be "considered a final order, appealable to circuit courts under the judicial review *provisions* of the State's Administration [sic] Procedure Act, provided that the [EEOC] does not hold jurisdiction over the subject matter of the complaint." Revised Fiscal Note, 1982 Md. Laws, Ch. 129 (S.B. 419), at 1 (emphasis added). Ms. Rowe highlights that "provisions" is plural, therefore evincing the General Assembly's intent to apply multiple sections of the APA. Setting aside the fact that a fiscal note is not the binding text of a statute, this excerpt does not clearly mean that the General Assembly wished to apply multiple sections of the APA. A "provision" is "a clause in a statute, contract, or other legal instrument." Provision, Black's Law Dictionary (11th ed. 2019). SG § 10-222 itself contains multiple provisions setting forth the procedures for circuit court review of agency decisions, and the Revised Fiscal Note does not reveal any intent to look outside that section.[13]

---

Appellate Court exercising jurisdiction (let alone considering the statutory basis to do so), we do not think anything can be gleaned from the General Assembly's silence to date on this issue.

[13] As stated above, the Department of Fiscal Services wrote in the Revised Fiscal Note for S.B. 419 that a Commission no-probable-cause finding would be "appealable to the circuit courts *under the provisions of the State's Administration [sic] Procedure Act*[.]" (Emphasis added). That description of the bill does not convince us that the General Assembly intended SG § 10-223 to apply to final orders issued under SG § 20-1005(d)(2). Section 10-223(b)(1) provides that "[a] party who is aggrieved by a final judgment of a circuit court *under this subtitle* may appeal to the [Appellate Court.]" We read that language to apply specifically to contested cases governed by the APA. The Revised Fiscal

Second, the Maryland Commission for Women submitted testimony that noted the absence of an "appeal process," and Ms. Rowe reads "process" to mean more than one step. *See* Letter from Maryland Commission for Women to the Constitutional and Public Law Committee (Feb. 4, 1982) *in* 1982 Md. Laws, Ch. 129 (S.B. 419) ("Currently … there is no appeal process available for persons who receive a no probable cause finding."). This, too, is an overreading of legislative materials. There is no basis to conclude from this letter that the General Assembly, in enacting an "appeal process" that only referred to SG § 10-222, intended two levels of judicial review.[14]

### 3. Our Reading of the Statute Does Not Lead to An Illogical Result.

There is nothing illogical about giving effect to the plain language of SG § 20-1005(d)(2). The difference between a Commission no-probable-cause finding after an investigation and a Commission final order after an administrative hearing supports the notion that the General Assembly intended to authorize one level of judicial review for the former and at least two levels of judicial review for the latter. The Commission's

---

Note contains different language – "under the provisions of the [APA]" – and the actual operative language of § 20-1005(d)(2) is "as provided in § 10-222[.]" The General Assembly's reference to what is "provided in § 10-222" – consistent with the Revised Fiscal Note's reference to the "provisions of the [APA]" – means that circuit court judges should follow § 10-222's procedures when considering petitions for judicial review of Commission no-probable-cause findings to the extent those provisions may be applicable. The reference in § 20-1005(d)(2) to what is "provided" in § 10-222 does not transform a petition for judicial review filed under § 20-1005(d)(2) into a petition for judicial review filed "under" the APA. Nor does it transform a final order issued under § 20-1005(d)(2) into a "final judgment under [the APA]."

[14] Indeed, notes from the March 31, 1982 Constitutional and Administrative Law Committee public hearing indicate that advocates testified that "[t]here has been some question as to whether these people had *any* right of appeal." (Emphasis in original.)

post-complaint investigative process determines whether there is probable cause to believe a discriminatory act has been committed, initiating conciliatory efforts if probable cause exists. SG § 20-1005(b). At the same time, the investigative process operates to protect respondents from frivolous claims. *See State Comm'n on Hum. Rels. v. Talbot Cnty. Det. Ctr.*, 370 Md. 115, 135 (2002). Whether to afford one or two levels of judicial review with respect to Commission no-probable-cause determinations is a policy decision that was and is the General Assembly's to make. The plain language of § 20-1005(d)(2) indicates that the General Assembly decided that the amount of judicial review following a no-probable-cause determination should be less than the judicial review available after an administrative hearing. That legislative judgment is not illogical, let alone unconstitutional or otherwise contrary to law. Here, Ms. Rowe availed herself of judicial review of the Commission's finding, and the statutory scheme's purposes are not frustrated by limiting review to the circuit court rather than extending it to the Appellate Court. The General Assembly, of course, may amend § 20-1005(d)(2) to add a grant of review to the Appellate Court if it decides that, going forward, one level of judicial review of no-probable-cause determinations is insufficient.

## IV

## Conclusion

When state law requires an express grant of the right to appeal from judicial review of an agency decision, that grant must truly be express. The plain language of SG § 20-1005(d)(2) specifically references only SG § 10-222 of the APA, which applies to circuit court judicial review. Section 20-1005(d)(2), therefore, is not an express grant of

31

review in the Appellate Court of Commission no-probable-cause findings. Nor does § 10-223 of the APA operate as an express grant of a second level of appellate review of such findings, because a circuit court judgment reviewing a no-probable-cause finding under SG § 20-1005(d)(2) is not a "final judgment under" the APA. For these reasons, the Appellate Court correctly dismissed Ms. Rowe's appeal.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

Circuit Court for Baltimore City
Case No. 24-C-20-003503
Argued: December 5, 2022

IN THE SUPREME COURT

OF MARYLAND*

No. 17

September Term, 2022

_____

JENNIFER ROWE

v.

MARYLAND COMMISSION ON CIVIL
RIGHTS

_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Dissenting Opinion by Fader, C.J., in which
Watts and Booth, JJ., join

_____

Filed: March 29, 2023

* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

Although there is much I agree with in the well-written and thorough majority opinion, I respectfully dissent. Pursuant to § 12-302 of the Courts and Judicial Proceedings Article (Repl. 2020; Supp. 2022), a right of appeal from a circuit court's judgment on judicial review of the decision of an administrative agency must be "expressly granted by law." The General Assembly has expressly granted a right of appeal from a circuit court's judgment on judicial review of a no probable cause finding by the Maryland Commission on Civil Rights (the "Commission") through the combined operation of §§ 20-1005(d)(2), 10-222, and 10-223 of the State Government Article (Repl. 2021). Although the General Assembly admittedly could have carved a simpler path to establishing that right, as it has done in some other instances, that does not render the grant of that right any less express or any less valid.

As the majority correctly observes, the requirement in § 12-302 that a right of appeal in a judicial review proceeding be "expressly granted by law" is an exception to the general right of appeal from final judgments of circuit courts contained in § 12-301 of the Courts and Judicial Proceedings Article. Slip op. at 11. Thus, any right of appeal from a circuit court's judgment made in the exercise of judicial review must: (1) emanate from a source of law other than § 12-301; and (2) be express, not implicit. Ms. Rowe contends that she has a right of appeal that emanates not from § 12-301, but from the collective effect of three provisions of the State Government Article. The critical question before us, therefore,

is whether those provisions establish a right of appeal and do so expressly.[1] I believe they do, in three straightforward steps.

First, § 20-1005(d)(2) of the State Government Article provides, as relevant here, that "a denial of a request for reconsideration of a finding of no probable cause by the Commission is a final order appealable to the circuit court as provided in § 10-222 of this article." Section 20-1005(d)(2) thus (1) establishes a right to judicial review of a no probable cause finding and (2) identifies § 10-222 as the statutory provision that governs the exercise of that right.

Second, § 10-222 establishes an entitlement to judicial review by "a party who is aggrieved by the final decision in a contested case" under Maryland's Administrative Procedure Act ("APA") and provides rules governing such a proceeding. Those rules require that such proceedings "be filed with the circuit court for the county where any party resides or has a principal place of business" and address issues including, among other things, permissible intervention, the submission of evidence, and the right to oral argument and submission of written briefs. *See id.* § 10-222(c) – (g). Section 10-222(h) also identifies how a circuit court may resolve a judicial review action, including the bases on which the court may reverse or modify the decision under review.

---

[1] Ms. Rowe and her *amici curiae* rely in part on policy arguments that they believe favor permitting appellate review. However, as the majority correctly points out, the question before is one of statutory interpretation. Slip op. at 9. And here, our decision is further constrained by the requirement that any right of appeal be "expressly granted." Cts. & Jud. Proc. § 12-302. As a result, without any commentary on the value of the policy arguments made by any party, they do not play a role in my analysis.

2

Third, § 10-223 provides that, with two exceptions identified below, "[a] party who is aggrieved by a final judgment of a circuit court under this subtitle may appeal to the [Appellate Court of Maryland] in the manner that law provides for appeal of civil cases."

Thus, § 20-1005(d)(2) provides a right to judicial review "as provided in § 10-222"; § 10-222 provides rules governing such proceedings, including defining the types of judgment a court may enter; and § 10-223 authorizes the filing of an appeal from "a final judgment of a circuit court under this subtitle." Because a final judgment rendered by a circuit court under § 10-222 is rendered under the same subtitle in which § 10-223 appears, that latter section provides an express grant of a right of appeal satisfying the requirement in Courts and Judicial Proceedings § 12-302. The three statutory provisions on which this analysis depends are clear and, at each step, express. No step in the analysis relies on implication or requires resort to any source other than the plain language of the statutory provisions.

I have no quibble with the majority's conclusion that § 20-1005(d)(2) does not by itself expressly authorize an appeal from a circuit court's judgment on judicial review of a no probable cause finding. That is because, as the majority points out, the plain language of § 20-1005(d)(2) does not expressly invoke appellate review. *See* slip op. at 16-17.

For several reasons, however, I disagree with the majority's conclusion that § 10-223 does not authorize appellate review of a circuit court's judgment on judicial review of a no probable cause finding that is conducted "as provided in § 10-222 of this article." *See* Slip op. at 23-24.

3

First, § 10-223 does not limit the right of appeal only to final judgments in contested cases,[2] only to final judgments in proceedings initiated under the Administrative Procedure Act, or only to proceedings that were conducted under § 10-222 pursuant to a statutory provision that also specifically mentions § 10-223. Instead, § 10-223 applies broadly to any "final judgment of a circuit court under this subtitle." A final judgment that is entered in a judicial review proceeding conducted under § 10-222 is such a judgment.

The majority states that a circuit court's final judgment on judicial review of a no probable cause finding is not, in fact, "a final judgment under § 10-222" that would render it subject to the plain scope of § 10-223, but is instead "a final judgment issued under § 20-1005(d)(2)." Slip op. at 24. I disagree. Section 20-1005(d)(2) makes no provision for entry of a judgment by a circuit court on judicial review. Instead, it makes *the Commission's* denial of a motion for reconsideration of a no probable cause finding "a final order," and provides that such an order is then "appealable to the circuit court as provided in § 10-222 of this article." It is § 10-222 that then governs the ensuing judicial review proceeding, including the entry of judgment by the circuit court. Interpreting § 10-223 to exclude judgments entered by circuit courts on judicial review of no probable cause findings because the proceedings did not begin under that subtitle implicitly adds a limitation that is not present in the statutory text, contrary to one of our fundamental canons

_____

[2] The majority states that "[t]he reference in § 20-1005(d)(2) to § 10-222 does not transform an initial investigation and no-probable-cause finding into an APA contested case as to which every provision of the entire APA – including SG § 10-223 – applies." Slip op. at 17. I agree. But, as explained above, § 10-223 does not limit the right of appeal to contested cases.

4

of statutory construction. *See Mayor & City Council of Baltimore v. Thornton Mellon, LLC*, 478 Md. 396, 428-29 (2022) ("We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit or extend its application." (quoting *Lockshin v. Semsker*, 412 Md. 257, 275 (2010))).

Second, although the General Assembly could have included in § 20-1005(d)(2) a reference to § 10-223 or to the entirety of Subtitle 2 of Title 10 (or even to the entirety of Title 10 or of the State Government Article), I am not aware of any authority requiring it to do so. Nothing about the phrase "expressly granted by law" limits where the express grant of authority must appear or suggests that, to be effective, such a grant must appear within the statutory scheme in which the underlying proceeding arises. Here, the express grant of authority is contained in § 10-223, which applies broadly to all circuit court judgments entered under the subtitle in which it appears.

Relatedly, that the General Assembly has, in other judicial review provisions, included specific references to § 10-223 or general references to the entirety of Subtitle 2 of Title 10 is not dispositive. It is true that the use of different language in similar or related provisions can inform our interpretation of statutory language and even be quite persuasive. *See, e.g.*, *Lawrence v. State*, 475 Md. 384, 406 (2021) ("It is a common rule of statutory construction that, when a legislature uses different words, especially in the same section or in a part of the statute that deals with the same subject, it usually intends different things." (quoting *Toler v. Motor Vehicle Admin.*, 373 Md. 214, 223 (2003))). However, it is also

5

possible to "make too much of too little" based on such linguistic arguments. *See Nat'l Fed'n of Fed. Emps., Loc. 1309 v. Dep't of Interior*, 526 U.S. 86, 93-94 (1999).

Here, the only provision that the Commission cites as an example from the same title of the State Government Article is located in § 20-1030, which authorizes judicial review from decisions of the Commission concerning discriminatory housing practices. *See* State Gov't § 20-1030(a) (authorizing "judicial review . . . in accordance with the provisions for judicial review under Title 10, Subtitle 2 of this article"). Notably, however, that provision was enacted 11 years after § 20-1005(d)(2), *see* 1982 Md. Laws, ch. 129 (containing § 20-1005(d)(2)); 1991 Md. Laws, ch. 571 (containing § 20-1030(a)), and the Commission has not identified any reason for us to conclude that the adoption of the language in § 20-1030(a) was intended to distinguish it from the language in § 20-1005(d)(2). Under the circumstances, although the difference in language is relevant and admittedly weighs in favor of the Commission's position, I do not think it overcomes the plain, express language of § 10-223.

The majority opinion impressively catalogues judicial review provisions elsewhere in the Code that are similarly more specific in referencing § 10-223, the entirety of Subtitle 2, or the intermediate appellate court. Slip op. at 17-19 nn.4 & 6-7. Those provisions are, of course, even further removed from § 20-1005(d)(2), and they also do not negate the breadth or scope of the express language of § 10-223.

By contrast, § 5-310(e) of the State Personnel and Pensions Article, which is part of the Maryland Whistleblower Law, contains similar language to § 20-1005(d)(2) and also has given rise to appeals without any apparent question as to whether they were authorized.

6

Section 5-310(e) provides that "[a] complainant or appointing authority may appeal the decision [of the Office of Administrative Hearings on the whistleblower claim] . . . in accordance with § 10-222 of the State Government Article." Notwithstanding the absence of any express invocation of § 10-223 in that provision, it has given rise to several appellate decisions, including at least four that have reached this Court. *See Donlon v. Montgomery County Pub. Sch.*, 460 Md. 62 (2018); *Lawson v. Bowie State Univ.*, 421 Md. 245 (2011); *Dep't of Nat. Res. v. Heller*, 391 Md. 148 (2006); *Montgomery v. Eastern Corr. Inst.*, 377 Md. 615 (2003); *McReady v. Univ. Sys. Md.*, 203 Md. App. 225 (2012). The Court's decision today may have implications for whether future whistleblower disputes can reach the appellate courts.

Third, the breadth of the express grant of coverage in § 10-223 is no reason to disregard it. Section 10-223 contains two subsections. Subsection (a) provides that the section "does not apply" to two specific types of cases: (1) those arising under Title 16 of the Transportation Article, unless otherwise provided; and (2) judgments on actions of the Inmate Grievance Office. Subsection (b) then expressly grants a right of appeal from "a final judgment of a circuit court under this subtitle." The structure of this provision is thus broadly inclusive of all final judgments issued under the subtitle other than those that are specifically excluded. Where the scope of the express grant is broad, and especially where the General Assembly has carved out exclusions, we should presume that the General Assembly "meant what it said and said what it meant." *Peterson v. State*, 467 Md. 713, 730 (2020) (quoting *Bellard v. State*, 452 Md. 467, 481 (2017)).

7

Fourth, notably, § 10-222 is written with a scope that is expressly limited to contested cases, but § 10-223 is not. Section 10-222(a)(1) authorizes judicial review only from a "final decision in a contested case," and then the remainder of the provision establishes rules governing such proceedings. By its own terms, then, § 10-222 applies only to contested cases. It is only as a result of the specific invocation of § 10-222 in § 20-1005(d)(2) that the former applies here.

By contrast, § 10-223 contains no comparable, internal limitation to contested cases. Instead, § 10-223 applies by its plain language to any "final judgment of a circuit court under this subtitle." State Gov't § 10-223(b). There was thus no need for § 20-1005(d)(2) to specifically invoke § 10-223 to make it applicable to a final judgment rendered by a circuit court pursuant to § 10-222.

In sum, a straightforward application of §§ 20-1005(d)(2), 10-222, and 10-223, demonstrates that the General Assembly has expressly granted a right of appeal from the final judgment of a circuit court exercising judicial review of a no probable cause finding issued by the Commission. I would therefore reverse the decision of the Appellate Court of Maryland and remand for further proceedings.

As a final note, although my conclusion is based on the foregoing exercise of statutory construction, the history of the adoption of what is now § 20-1005(d)(2) and its application over the last nearly four decades strongly supports that construction. As the majority points out, slip op. at 25-26, that provision was enacted in response to the first

8

iteration of the *Vavasori* case, in which the Baltimore City Court[3] and the Appellate Court concluded that there was no right of judicial review from a no probable cause finding of the Commission. *See Vavasori v. Vulcan-Hart Corp.*, No. 209, slip op. at 1 (Md. Ct. Spec. App. Dec. 27, 1982). In response, the General Assembly enacted Article 49B, § 10(d), the predecessor to § 20-1005(d), for the purpose of making such findings "appealable to the circuit courts under the judicial review provisions of the State's [Administrative] Procedure Act." *Revised Fiscal Note*, Bill File, S.B. 419, at 1 (Md. Laws 1982).

Ms. Rowe asserts that the General Assembly's legislative purpose in making no probable cause findings subject to judicial review supports her contention that the General Assembly must also have intended to authorize appellate review of such decisions. Like the majority, *see* slip op. at 21-22, 27-28, I disagree. The General Assembly could have authorized a judicial review procedure containing a single layer of circuit court review, and doing so would not have been in any way inconsistent with a purpose of providing judicial review. Of course, providing an avenue for appellate review of a circuit court's decision is also not in any way inconsistent with that purpose. However, what is most telling about the legislative intent behind § 20-1005(d)(2), and of the contemporaneous understanding of that intent, is what happened next.

After the enactment of the predecessor to § 20-1005(d)(2), the Appellate Court concluded that the statute applied retroactively to Mr. Vavasori's case and remanded the case to the circuit court, which exercised its newly conferred jurisdiction to affirm the

---

[3] As discussed in the majority opinion, *see* slip op. at 24 n.10, the Baltimore City Court was a predecessor to the Circuit Court for Baltimore City.

Commission's no probable cause determination. *See Vavasori v. Vulcan-Hart Corp.*, No. 209, slip op. at 1 (Md. Ct. Spec. App. Dec. 27, 1982). Mr. Vavasori appealed. *See Vavasori v. Comm'n on Hum. Rels.*, 65 Md. App. 237 (1985). Without discussing its jurisdiction, the intermediate appellate court addressed the merits of Mr. Vavasori's contentions and affirmed. *See id.* at 251, 252 ("[W]e find evidence to support the Commission's conclusion that there was no probable cause to believe that [Mr. Vavasori] was the victim of discrimination.").

To be sure, it appears that the question now before us was not raised in *Vavasori*'s second trip to the intermediate appellate court, and silence on an unraised issue ordinarily is not indicative of any view on the issue. Here, however, the court's silence is noteworthy for three reasons. First, unlike other issues, an appellate court "is obligated to address *sua sponte* the issue of whether [it] can exercise jurisdiction." *Stachowski v. State*, 416 Md. 276, 285 (2010). Second, jurisdiction had been at the center of the *Vavasori* case in its first trip to the Appellate Court, making it unlikely that the court would have neglected to consider the issue when the case returned to it. Third, the statutory change was very recent, had been targeted to respond to the court's decision in that same case, and applied only to judicial review of certain decisions of the Commission, which was a party to the appeal. It thus seems likely that the Commission and its counsel were well-informed about the legislative intent and would have raised absence of jurisdiction on appeal if there had been any question about it. Although I agree with the majority that "court rulings *generally* do not shed light on legislative intent," slip op. at 28 (emphasis added), the close relationship

10

between the *Vavasori* case and the particular legislative change at issue make it an exception.

Moreover, in addition to the Commission's notable silence, the General Assembly also remained silent in the face of the Appellate Court's reported decision in *Vavasori* so soon after the Legislature's adoption of the predecessor to § 20-1005(d)(2) in response to that very case. The General Assembly is presumed to be aware of reported appellate decisions interpreting statutes. *See Bellard*, 452 Md. at 494 ("The General Assembly is presumed to be aware of this Court's interpretations of statutes."). Yet neither contemporaneous with the second *Vavasori* decision nor in the almost four subsequent decades of apparently uninterrupted practice consistent with that decision has the General Assembly repudiated it. That legislative "inaction supports a conclusion that the General Assembly has acquiesced" to the exercise of appellate jurisdiction in these cases. *See Wadsworth v. Sharma*, 479 Md. 606, 622 (2022); *see also Howling v. State*, 478 Md. 472, 504 (2022) (finding that in not amending the statute at issue "over the course of several decades, the General Assembly has acquiesced in Maryland appellate courts' interpretation").

Justices Watts and Booth have authorized me to state that they join in this opinion.

11